[Cite as *State v. Exon*, 2016-Ohio-600.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## CLARK COUNTY

|  |  |  |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | C.A. CASE NO. 2014-CA-106 |
| | : | |
| v. | : | T.C. NO. 14CR150 |
| | : | |
| JERRY EXON, SR. | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . .

# **O P I N I O N**

Rendered on the ___19th___ day of ____February___, 2016.

. . . . . . . . . .

RYAN A. SAUNDERS, Atty. Reg. No. 0091678, Assistant Prosecuting Attorney, 50 E. Columbia Street, Suite 449, Springfield, Ohio 45502
        Attorney for Plaintiff-Appellee

SEAN J. VALLONE, Atty. Reg. No. 0064053, 5 Irongate Park Drive, Suite A, Centerville, Ohio 45459
        Attorney for Defendant-Appellant

JERRY EXON, SR., #A709079, North Central Correctional Institute, 670 Marion-Williamsport Road, P. O. Box 1812, Marion, Ohio 43301
        Defendant-Appellant

. . . . . . . . . . . .

FROELICH, J.

{¶ 1} Jerry Exon, Sr. was convicted after a jury trial in the Clark County Court of Common Pleas of robbery, in violation of R.C. 2911.02(A)(2), a second-degree felony.

The trial court sentenced him to the maximum term of eight years in prison, to be served consecutively with sentences imposed in four other cases.

{¶ 2} Exon appeals from his conviction. For the following reasons, the trial court's judgment will be affirmed.

## I. Factual and Procedural History

{¶ 3} In March 2014, Exon was indicted for robbery, in violation of R.C. 2911.02(A)(2). The charges stemmed from the robbery of a Speedway gas station in Springfield on February 16, 2014. Exon was arrested in May 2014. At the time of his arrest, there were warrants for his arrest in several other cases.

{¶ 4} A jury trial in this matter was scheduled for September 10, 2014. The day before trial, the State filed a notice of its intent to use evidence of Exon's prior crimes at trial. It noted that, in a plea deal on August 19, 2014, Exon had pled guilty to one count of a two-count indictment and agreed to pay restitution on both counts in Clark C.P. No. 2013 CR 668.[1] In Case No. 2013 CR 668, Exon and an accomplice had entered the storage room of the same Speedway store on August 1 and 2, 2013, and stuffed their clothing with cartons of cigarettes. Although no written entry was filed, the trial court apparently overruled the State's motion.

{¶ 5} A one-day trial was held on September 10. After deliberations, the jury convicted Exon of the February 16 robbery. The following day (September 11), the trial court sentenced Exon and imposed a sentence of eight years in prison, to be served consecutively to the sentences previously imposed in Clark M.C. No. 13 CRB 4891, Clark

---

[1] The State's motion did not identify the offense to which Exon pled in Case No. 13 CR 668. However, the presentence investigation report in this case indicates that he was convicted of theft and was sentenced to six months in prison, plus restitution.

C.P. No. 13 CR 668, Clark C.P. No. 14 CR 151, and Clark C.P. No. 14 CR 347. The court filed a written judgment entry consistent with its announced sentence.

{¶ 6} Exon appealed from the trial court's judgment. His appellate counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), indicating that he was unable to find any potential assignments of error having arguable merit. By entry, we informed Exon that his attorney had filed an *Anders* brief on his behalf and granted him 60 days from that date to file a pro se brief. Exon filed a supplemental pro se brief. The case is now before us for our independent review of the record

{¶ 7} Exon's appellate counsel raised four potential assignments of error. Exon's supplemental pro se brief raises five assignments of error, which are, in most respects, similar to those raised by his attorney. We will address them in a manner that facilitates our analysis.

## II. Sufficiency and Manifest Weight of the Evidence

{¶ 8} Counsel's third potential assignment of error and Exon's fourth and fifth assignments of error claim that his conviction for robbery, in violation of R.C. 2911.02(A)(2), was based on insufficient evidence and was against the manifest weight of the evidence.

{¶ 9} "A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law." *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 10, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

**{¶ 10}** In contrast, "a weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." *Wilson* at ¶ 12. *See Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 19 ("'manifest weight of the evidence' refers to a greater amount of credible evidence and relates to persuasion"). When evaluating whether a conviction is against the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins*, 78 Ohio St.3d at 387, citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

**{¶ 11}** Because the trier of fact sees and hears the witnesses at trial, we must defer to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses. *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684 (Aug. 22, 1997). However, we may determine which of several competing inferences suggested by the evidence should be preferred. *Id*. The fact that the evidence is subject to different interpretations does not render the conviction against the manifest weight of the evidence. *Wilson* at ¶ 14. A judgment of conviction should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. *Martin* at 175.

**{¶ 12}** The State presented six witnesses at trial. Exon did not present any witnesses. The State's evidence at trial established the following facts:

{¶ 13} In the early morning hours of February 16, 2014, Richard Reynolds was the sole employee at the Speedway gas station and convenience store on North Bechtle Avenue in Springfield.   The store has beverage coolers along the walls on the right side of the store, upon entering the front door.   The counter is located to the left of the front door.   A cigarette storage room is located down a short hallway near the counter area.

{¶ 14} At approximately 4:32 a.m., Exon and another man, Henry McWhorter, entered the Speedway store.   McWhorter repeatedly tried to get Reynolds's attention, asking him various questions about milk and orange juice products.   Reynolds tried not to walk too far from the counter, but he would step halfway through the store to answer the questions.   After the third time, Reynolds told McWhorter that he could not keep coming over.   At that time, Reynolds noticed that Exon was no longer in sight.

{¶ 15} Reynolds looked into the cigarette room and saw Exon "stashing cartons in his shirt."   Reynolds told Exon to "drop them and let them go."   Exon placed two cartons of cigarettes on a table in the room.   McWhorter then "stepped up on" Reynolds, making Reynolds feel "uneasy."   Reynolds told Exon and McWhorter to leave.   The men stood there for a moment, and Exon "looked at [Reynolds] in a threatening way."   Reynolds stepped back and told Exon to go.   Exon walked out of the storage room past Reynolds, and Reynolds followed Exon and McWhorter toward the front door.   Reynolds told them that he was going to call the police.

{¶ 16} As Exon neared the front door, Reynolds noticed that Exon had a carton of cigarettes under his left arm.   Reynolds started to reach for the carton to retrieve it. Exon turned and punched Reynolds in the face, hitting him on the chin.   Exon looked Reynolds in the eye, dropped the carton, left the store, and got into a car.   The car was

driven by a third individual who had not entered the store. Reynolds pressed the panic button at the store and waited for the police to arrive.

**{¶ 17}** The State presented surveillance video from the Speedway, and Reynolds described the events as the video was played for the jury.

**{¶ 18}** Springfield Police Officers Jerrod Osborne and Tyler Elliott responded to the Speedway. Osborne spoke with Reynolds, and both officers reviewed the surveillance video with him. Osborne recognized McWhorter from the surveillance video; Elliott recognized both McWhorter and Exon. The matter was referred to a detective for the preparation of a photo lineup.

**{¶ 19}** Springfield Police Officer Sandy Fent testified that she showed two photospreads to Reynolds on February 18, 2014. She did not know any details about the case. Fent testified that Reynolds identified the photos for McWhorter and Exon.

**{¶ 20}** Reynolds testified that, on February 18, he reviewed two photospreads prepared by the police. Reynolds identified Exon and McWhorter as the individuals involved in the offense. Reynolds also testified that he had seen both men before at a liquor store at which he (Reynolds) had worked and that "we've had issues." Reynolds identified Exon as the man who had been in the cigarette storage room.

**{¶ 21}** Detective Dan DeWine testified that he was assigned to the case, reviewed the reports, and viewed the surveillance video. He assembled photospreads concerning each suspect. As part of his investigation, DeWine also located the driver of the vehicle and spoke to him and McWhorter. DeWine concluded that McWhorter and Exon had participated in the incident in the store.

**{¶ 22}** On appeal, Exon does not argue that he was not involved in the theft of

cigarette cartons from the Speedway store. To the contrary, he admits his participation in the theft. Exon argues, however, that he did not cause physical harm to Reynolds.

{¶ 23} R.C. 2911.02, the robbery statute, provides:

(A) No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following:

(1) Have a deadly weapon on or about the offender's person or under the offender's control;

(2) Inflict, attempt to inflict, or threaten to inflict physical harm on another;

(3) Use or threaten the immediate use of force against another.

Physical harm to persons is defined as "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3). A violation of R.C. 2911.02(A)(1) or (2) is a second-degree felony. R.C. 2911.02(B). A violation of R.C. 2911.02(A)(3) is a third-degree felony. *Id.*

{¶ 24} Reynolds testified that Exon punched him on the chin when he (Reynolds) reached for the cigarette carton under Exon's left arm. A still photograph from the surveillance video, which captures only the left side of Reynolds's head and shoulder, also appears to show a fist making contact with the left side of Reynolds's jaw. Reynolds stated that Exon made "solid contact," but it hurt his "pride more than anything." When asked on cross-examination about his testimony that the only injury he sustained was to his ego, Reynolds responded, "I mean other than the slight pain that I felt in my jaw for a few hours; yeah, my ego was more hurt than anything."

{¶ 25} Reynolds's testimony, if believed, was sufficient to establish that, in attempting or committing a theft offense, Exon had inflicted or attempted to inflict physical

harm on Reynolds. Reynolds testified that Exon punched him on the chin. Although he stated that his ego was hurt more than anything, he indicated that he felt slight pain in his jaw for a few hours after the assault. Moreover, a jury could reasonably conclude that, by punching Reynolds, Exon attempted to inflict physical harm. *See State v. McKinnon*, 7th Dist. Columbiana No. 09 CO 17, 2010-Ohio-2145, ¶ 20 (hitting or trying to punch store employee constituted the infliction or attempt to inflict physical harm). Upon review of the entire trial transcript, the jury did not lose its way when it convicted Exon of robbery, in violation of R.C. 2911.02(A)(2).

{¶ 26} Exon's conviction for robbery, in violation of R.C. 2911.02(A)(2), was neither based on insufficient evidence or against the manifest weight of the evidence.

### III. Ineffective Assistance of Counsel

{¶ 27} Counsel's first proposed assignment of error and Exon's first assignment of error claim that trial counsel rendered ineffective assistance.

{¶ 28} To establish ineffective assistance of counsel, Exon must demonstrate both that trial counsel's conduct fell below an objective standard of reasonableness and that the errors were serious enough to create a reasonable probability that, but for the errors, the outcome would have been different. *See Strickland v. Washington*, 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). Trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. *Strickland*, 466 U.S. at 688, 104 S.Ct. 2052. Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of

counsel. *State v. Cook*, 65 Ohio St.3d 516, 524-525, 605 N.E.2d 70 (1992); *State v. Rucker*, 2d Dist. Montgomery No. 24340, 2012-Ohio-4860, ¶ 58.

{¶ 29} Both appellate counsel and Exon claim that trial counsel acted deficiently during jury selection. Appellate counsel raises that trial counsel did not challenge an alternate juror who knew a lawyer in the prosecutor's office and that counsel did not challenge the racial make-up of the jury pool. Exon argues that his trial attorney made no challenges for cause, even though several potential jurors indicated that they knew police officers or were victims of crime, and trial counsel did not excuse a potential juror who indicated that he wanted a quick verdict due to job obligations.

{¶ 30} The record does not reflect the racial make-up of the jury pool. There is nothing in the record to suggest that defense counsel acted deficiently by failing to challenge the jury pool on racial grounds or by failing to challenge the State's use of any peremptory challenges on constitutional grounds.

{¶ 31} Crim.R. 24(C) provides fourteen bases for a potential juror to be challenged for cause. In addition, in a criminal case involving a non-capital felony offense, each party has four peremptory challenges. Crim.R. 24(D).

{¶ 32} The record indicates that several prospective jurors knew or were related to police officers and many potential jurors had previously been victims of crimes, including theft offenses. However, these prospective jurors indicated that they could be fair and impartial, and several of the prospective jurors were dismissed by means of peremptory challenges. We find no arguable claim based on defense counsel's failure to make any challenge for cause or his use of peremptory challenges.

{¶ 33} Exon also asserts that trial counsel was deficient for failing to challenge

Detective DeWine's presence in the courtroom during the trial. He contends that there should have been a separation of witnesses.

{¶ 34} Evid.R. 615(A) provides that, at the request of a party, the court shall order witnesses be excluded from the courtroom so that they cannot hear the testimony of other witnesses. The court may also order the separation of witnesses on its own motion. This exclusion does not apply to certain persons, including "an officer or employee of a party that is not a natural person designated as its representative by its attorney." Evid.R. 615(B)(2).

{¶ 35} The record reflects that Detective DeWine, who was seated at the prosecutor's table, was introduced to the jury at the beginning of jury selection. Although the record does not include a request by the State for Detective DeWine to be designated the State's representative at trial, DeWine was the lead detective in the case, and it is apparent that DeWine sat at the prosecutor's table as the State's representative during the trial. And, Exon has not asserted that DeWine's testimony would have been different had he not been permitted to sit with the prosecutor. We find no arguable claim that Exon's trial counsel acted deficiently in failing to challenge DeWine's presence in the courtroom during the trial.

{¶ 36} Exon argues that trial counsel's "worst mistake" was his failure to object to Reynolds's testimony that he had known Exon from his (Reynolds's) employment at a different store and that employees "had issues" with Exon. Exon claims that this testimony amounted to testimony that Exon had committed prior crimes.

{¶ 37} Immediately after Reynolds testified that he recognized Exon and McWhorter from employment at a different store and that "we've had issues," the trial

court asked counsel to approach. The court stated: "I don't have any problem with what he said so far, but I want to make sure he knows he's not supposed to mention anything about his prior. * * * I just want to make sure it doesn't go any further." The following exchange then occurred:

> [Prosecutor]: So these were two gentlemen that you had seen coming into the Speedway location before.
>
> Reynolds: Actually, I used to work at a liquor store and they had – we had issues with them.
>
> [Defense counsel]: Objection, Your Honor.
>
> [Prosecutor]: Okay. My question is you were familiar –
>
> Reynolds: Yes.
>
> [Prosecutor]: -- with who they were.
>
> Reynolds: Yes.

No further mention was made of any prior conduct by Exon.

{¶ 38} We find no arguable claim trial counsel acted deficiently when he failed to object to Reynolds's testimony that he had prior "issues" with Exon. Reynolds's testimony did not reference any prior criminal conviction or necessarily indicate that Exon had engaged in prior criminal conduct. Trial counsel could have reasonably believed that an objection would highlight Reynolds's testimony about prior "issues," and the trial court's immediate handling of the matter reflected that the court would have overruled the objection at that time. Further, the trial court made clear that it would not permit the State to elicit testimony regarding Exon's criminal history. When, upon further questioning, Reynolds clarified that he had had "issues" with Exon while employed at a liquor store,

Exon's trial counsel objected. Trial counsel's conduct did not fall below an objective standard of reasonableness.

### IV. Prosecutorial Misconduct

{¶ 39} Appellate counsel's second proposed assignment of error and Exon's second assignment of error claim that the prosecutor engaged in misconduct, violating Exon's right to due process.

{¶ 40} In reviewing claims of prosecutorial misconduct, the test is whether the prosecutor's remarks or conduct were improper and, if so, whether those comments prejudicially affected the substantial rights of the defendant. *State v. Jones*, 90 Ohio St.3d 403, 420, 739 N.E.2d 300 (2000). The touchstone of analysis is the fairness of the trial, not the culpability of the prosecutor. *Id.*, quoting *Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982). Where it is clear beyond a reasonable doubt that the jury would have found the defendant guilty, even absent the alleged misconduct, the defendant has not been prejudiced, and his conviction will not be reversed. *See State v. Underwood*, 2d Dist. Montgomery No. 24186, 2011-Ohio-5418, ¶ 21. We review allegations of prosecutorial misconduct in the context of the entire trial. *State v. Stevenson*, 2d Dist. Greene No. 2007-CA-51, 2008-Ohio-2900, ¶ 42, citing *Darden v. Wainwright*, 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986).

{¶ 41} First, we find nothing improper in the State's asking Reynolds whether he knew either of the individuals who came into the Speedway on February 16. The fact that Reynolds recognized Exon from prior encounters was relevant to the accuracy of his identification. The prosecutor's question did not ask for details about the prior encounters or encourage Reynolds to testify about Exon's prior criminal conduct.

{¶ 42} Second, Exon asserts that the prosecutor engaged in misconduct when Reynolds testified to the "mug shots" that he reviewed. After Reynolds testified that he had been asked to look at photo arrays, the prosecutor handed Reynolds State's Exhibit B-2 and asked Reynolds to identify the exhibit. Reynolds responded, "It's the mug shots of the gentlemen that they had me check out when they asked." The prosecutor then asked Reynolds if he was able to identify one of the individuals as being involved in the February 13 incident. Reynolds responded that he was able to, and he indicated the number of the photo that he had selected. Reynolds testified similarly regarding State's Exhibit C-2, the second photospread.

{¶ 43} The prosecutor did not refer to the photographs in the photospreads as mug shots, nor did the prosecutor make any reference to the fact that individuals in the photographs might have criminal records. When Detective DeWine testified about the photospreads, he testified that Exhibit B-2 was "a photo array composite that I have assembled from the NWS system." He testified that Exhibit C-2 was "also a photo array composite that I put together." The prosecutor did not elicit any testimony as to the source of the photographs. We find no improper conduct by the prosecutor in his questioning about the photo arrays.

{¶ 44} Third, Exon asserts that the prosecutor engaged in misconduct when, during the State's examination of Reynolds, the prosecutor asked if Reynolds had "ever been punched in the head before while you were at work at Speedway." (Tr. at 100.) Defense counsel objected on relevance grounds, but the objection was overruled. Reynolds responded, "No."

{¶ 45} We agree with Exon that this question was irrelevant to the issues before

the jury.   However, we find no basis to conclude that the question and its answer, in the context of the entire trial, resulted in any prejudice to him.

{¶ 46} Upon review of the record, we conclude that Exon's right to due process was not violated as a result of prosecutorial misconduct.

{¶ 47} Finally, in a portion of his third assignment of error, Exon claims that the trial court abused its judicial discretion by "letting the prosecution proceed with its illegal tactics as outlined above without declaring a mistrial."   Having concluded that the prosecution did not engage in misconduct, this argument is also without arguable merit.

## V. Sentencing

{¶ 48} Appellate counsel's fourth proposed assignment of error and a portion of Exon's third assignment of error claims that the trial court abused its discretion and imposed a disproportionately harsh sentence when it imposed the maximum eight-year sentence for the robbery.

{¶ 49} "The trial court has full discretion to impose any sentence within the authorized statutory range, and the court is not required to make any findings or give its reasons for imposing maximum or more than minimum sentences."   *State v. King*, 2013-Ohio-2021, 992 N.E.2d 491, ¶ 45 (2d Dist.).   However, in exercising its discretion, a trial court must consider the statutory policies that apply to every felony offense, including those set out in R.C. 2929.11 and R.C. 2929.12.   *State v. Leopard*, 194 Ohio App.3d 500, 2011-Ohio-3864, 957 N.E.2d 55, ¶ 11 (2d Dist.), citing *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, 846 N.E.2d 1, ¶ 38.

{¶ 50} R.C. 2929.11 requires trial courts to be guided by the overriding principles of felony sentencing.   Those purposes are "to protect the public from future crime by the

offender and others and to punish the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." R.C. 2929.11(A). The court must "consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both." *Id.* R.C. 2929.11(B) further provides that "[a] sentence imposed for a felony shall be reasonably calculated to achieve the two overriding purposes of felony sentencing * * *, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders."

{¶ 51} R.C. 2929.12(B) sets forth nine factors indicating that an offender's conduct is more serious than conduct normally constituting the offense. These factors include whether the physical or mental injury to the victim was exacerbated because of the physical or mental condition of the victim; serious physical, psychological, or economic harm suffered by the victim as a result of the offense; whether the offender's relationship with the victim facilitated the offense; and whether the offender committed the offense for hire or as a part of an organized criminal activity. R.C. 2929.12(C) sets forth four factors indicating that an offender's conduct is less serious than conduct normally constituting the offense, including whether the victim induced or facilitated the offense, whether the offender acted under strong provocation, whether, in committing the offense, the offender did not cause or expect to cause physical harm to any person or property, and the existence of substantial grounds to mitigate the offender's conduct, although the grounds are not enough to constitute a defense. R.C. 2929.12(D) and (E) each lists five factors

that trial courts are to consider regarding the offender's likelihood of committing future crimes. Finally, R.C. 2929.12(F) requires the sentencing court to consider the offender's military service record.

{¶ 52} The language of R.C. 2929.11 and R.C. 2929.12 repeatedly refers to the exercise of the trial court's discretion when determining the appropriate sentence for an offense. For example, R.C. 2929.12(A) states that the court "*has discretion* to determine the most effective way to comply with the purposes and principles of sentencing set forth in section 2929.11." (Emphasis added.) R.C. 2929.12 then describes the factors that the court must consider, in addition to other "relevant" factors, when imposing sentence. A reasonable interpretation of these statutes would be that an appellate court should determine whether the discretion of the trial court was abused and whether the required and "relevant" factors were considered. And, we recently applied an abuse of discretion standard in reviewing whether a trial court erred in imposing a maximum sentence for having a weapon under disability. *State v. Fleming*, 2d Dist. Clark No. 14-CA-136, 2015-Ohio-5382; *see also, e.g., State v. Wheeler*, 9th Dist. Summit No. 27643, 2016-Ohio-15 (concluding that the 36-month maximum sentence of having a weapon under disability was not an abuse of discretion); *State v. Wilson*, 7th Dist. Mahoning No. 14 MA 43, 2015-Ohio-838 (five-year sentence was not an abuse of discretion).

{¶ 53} However, we have been somewhat inconsistent in identifying the appropriate standard when reviewing the sentence imposed for a specific offense. In *State v. Rodeffer*, 2013-Ohio-5759, 5 N.E.3d 1069 (2d Dist.), we held that we would no longer use an abuse of discretion standard in reviewing a felony sentence, but would apply the standard of review set forth in R.C. 2953.08(G)(2). Under R.C. 2953.08(G)(2),

an appellate court may increase, reduce, or modify a sentence, or it may vacate the sentence and remand for resentencing, only if it "clearly and convincingly" finds either (1) that the record does not support certain specified findings or (2) that the sentence imposed is contrary to law.   *Rodeffer* stated:

> Although [*State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124] no longer provides the framework for reviewing felony sentences, it does provide * * * adequate guidance for determining whether a sentence is clearly and convincingly contrary to law. * * * According to *Kalish*, a sentence is not contrary to law when the trial court imposes a sentence within the statutory range, after expressly stating that it had considered the purposes and principles of sentencing set forth in R.C. 2929.11, as well as the factors in R.C. 2929.12.

(Citations omitted.) *Rodeffer* at ¶ 32.

{¶ 54} Many of our cases have expressed reservations about *Rodeffer* and evaluate a defendant's sentence using both standards of review.   *E.g.*, *State v. Obsorne*, 2d Dist. Clark No. 2014-CA-107, 2015-Ohio-3058 (concluding that defendant's sentence was not clearly and convincingly unsupported by the record or contrary to law or constituted an abuse of discretion); *State v. Johnson*, 2d Dist. Clark No. 2013-CA-85, 2014-Ohio-2308.

{¶ 55} In this case, the trial court heard arguments from the prosecutor and defense counsel, and Exon spoke on his own behalf.   The trial court and counsel had also reviewed a presentence investigation report.   The report indicated that it consisted of some information from Exon's 2008 presentence investigation report with an updated

criminal history, information about the current offense, and updated information regarding Exon's incarceration from the Ohio Department of Rehabilitation and Correction (ODRC).

{¶ 56} The State asked the court to impose the maximum eight-year sentence. It argued that Exon was a "menace to society," who has three felony charges pending, including one for possession of cocaine. Exon's risk assessment survey, prepared in 2013, had showed that Exon was a moderate risk to offend; the State noted that Exon had four felony convictions since then. The State noted that Exon has violent tendencies, and it argued that his punching the Speedway clerk reflected those tendencies. The State emphasized Exon's extensive criminal history, which included a juvenile record with time spent in the DYS system, and numerous adult offenses. The prosecutor argued that Exon had served "at least 10 separate prison sentences for felony convictions. He has 39 jail sentences, multiple probation and parole violations, and society needs to be protected from Jerry Exon, Sr., for as long as possible."

{¶ 57} Defense counsel began by noting that the social and health summary portions of the presentence investigation report were prepared in 2008, and Exon "took issue" with some of the things reported. Counsel stated that Exon questioned the report's statement that he acknowledged use of marijuana only, and counsel indicated that Exon would admit to having a long history of substance abuse. Counsel continued, "In fact, I believe his criminal record clearly shows someone with a long history of use of substances" and "[t]he vast majority of my client's convictions * * * are theft and receiving stolen property, the type of things that arise when someone has an addiction that goes untreated." Counsel argued that Exon had not received substance abuse treatment, and he asked the court to consider placing Exon in a treatment program or to obtain treatment.

Finally, counsel asked the court to consider that Exon's co-defendant in this case received a six-month sentence and also has a "very lengthy criminal history."

{¶ 58} Exon spoke on his own behalf. He stated that he knew "what I did was wrong" and that he did it to support a drug habit. He indicated that he was addicted to crack cocaine and heroin. Exon stated that he had been to prison, but had never received help with his addiction. Exon asked for some type of treatment, indicating that he did not want "to be back into this lifestyle" after his punishment.

{¶ 59} The presentence investigation report indicated that Exon was 50 years old at sentencing. His criminal history included five juvenile offenses in 1982 and 1983, for which he received suspended sentences. He had numerous adult offenses between 1984 and 2014. These include more than 30 convictions for theft, as well as convictions for domestic violence, complicity to forgery, telephone harassment, identify theft, resisting arrest, possession of counterfeit controlled substances, vandalism, disorderly conduct, criminal trespass, criminal damaging, assault, receiving stolen property, operating a vehicle while under the influence, failure to appear, and felonious assault. Many of Exon's convictions were for misdemeanors. However, Exon had also been sentenced to prison on ten separate occasions, including the imposition of a prison sentence for violations of community control. The ODRC rules infraction report indicated that Exon had been caught stealing in prison.

{¶ 60} The trial court imposed the maximum eight-year sentence. The trial court noted that, when Exon was placed on community control in 2008, Exon had minimized his drug problem to the court. According to the presentence investigation report, Exon had stated that he was using marijuana two times per week, but he did not believe he had

a problem with marijuana.   The court further noted that Exon had attended an inpatient treatment program, but did not complete it.   The court recognized that Exon was now telling his attorney that he did not remember making these statements, but the court noted that the trial court had that information in 2008.   The court asked Exon if he had been going to a drug program while in jail.   Exon responded that he was attending "Mr. White's program."

**{¶ 61}** The court reviewed the statutory factors, stating:

* * * There are a lot of cases in here which are quite probable as well as possibly involved with drug addiction, a lot of thefts oftentimes results in drug addiction.   Don't know for certain, but they are consistent.   There's also offenses of violence, domestic violence, assault, assault, felonious assault.

In reviewing this case and the factors under R.C. 2929.12, I didn't find any factors that would make it worse or less serious and any similar robbery of a felony of the second degree as far as factors under R.C. 2929.12(B) and (C).   As to [R.C.] 2929.12(D) and (E), the Defendant was under release from confinement before trial in both this county and in Champaign County when the offense was committed.

He does have prior adjudications as delinquent, was not rehabilitated to a satisfactory degree after being adjudicated delinquent, has a lengthy history of criminal convictions, many of which are theft convictions, some [of] which are convictions for offenses of violence.   He's not responded favorably to previous sanctions imposed for those convictions, and I found

no genuine remorse for this offense.

There's no military history to consider.

There's no up-to-date ORAS score because the conviction was just handed down yesterday. It is a felony of the second degree. In reviewing factors under R.C. 2929.13, I find no factors which would overcome presumption for prison.

Based upon these factors and the facts of this case, the elements are to cause or attempt to cause or threaten to cause physical harm to another person. The victim did testify that in his experience in this instance, he was being threatened, but it wasn't just a threat. There was actual assault causing physical harm.

{¶ 62} An eight-year sentence for a relatively minor assault during a theft offense is no doubt harsh. However, the sentence was within the permissible range for a felony of the second degree, and Exon's extensive criminal history and lack of response to community sanctions or treatment provided justification for the trial court's decision to impose a lengthy sentence. We cannot clearly and convincingly find that the sentence was unsupported by the record or conclude that it was an abuse of discretion.

## VI. Conclusion

{¶ 63} We have conducted our independent review of the record pursuant to *Penson v. Ohio*, 488 U.S. 75, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988), and we agree with appellate counsel that there are no non-frivolous issues for review.

{¶ 64} The trial court's judgment will be affirmed.

. . . . . . . . . . . . .

DONOVAN, P.J. and WELBAUM, J., concur.

Copies mailed to:

Ryan A. Saunders
Sean J. Vallone
Jerry Exon, Sr.
Hon. Richard J. O'Neill