[Cite as *State v. Wheeler*, 2016-Ohio-15.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 27643 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| LESLIE A. WHEELER | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 2014 09 2785 (B) |

DECISION AND JOURNAL ENTRY

Dated: January 6, 2016

MOORE, Judge.

{¶1} Appellant, Leslie Wheeler, appeals his convictions by the Summit County Court of Common Pleas. This Court affirms.

I.

{¶2} On September 13, 2014, Akron Police Officer David Crockett noticed a vehicle traveling westbound on Interstate 76 at eighty-five miles per hour. After verifying that the vehicle had been reported stolen, Officer Crockett requested assistance. He activated his lights and sirens and pursued the vehicle alone. When the driver exited the highway but maintained a high rate of speed on Inman Street, Officer Crockett pursued the car until the driver crashed into a tree. The passenger fled on foot behind some nearby apartments, but police officers apprehended the driver as he fled in another direction. The driver identified Mr. Wheeler to police as the other person in the vehicle.

{¶3}    Mr. Wheeler was charged with having weapons while under disability in violation of R.C. 2923.13(A)(2) and (A)(3), obstructing official business in violation of R.C. 2921.31(A), and improperly handling firearms in a motor vehicle in violation of R.C. 2923.16(B).  During Mr. Wheeler's trial, the State introduced a security video that depicted the robbery of a gas station that occurred not long before the chase at issue in this case.  The trial court permitted the State to play the video over Mr. Wheeler's objection, but provided a limiting instruction to the jury before the footage was played and during jury instructions.

{¶4}    The trial court granted Mr. Wheeler's motion for judgment of acquittal on the charge of improperly handling firearms at the close of the State's case.  A jury found Mr. Wheeler guilty of the remaining charges, and the trial court sentenced him to concurrent prison terms totaling thirty-six months to be served consecutively to the sentence imposed in a different case.  Mr. Wheeler appealed.  We have rearranged his six assignments of error for ease of review.

II.

**ASSIGNMENT OF ERROR V**

THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED PREJUDICIAL ERROR WHEN THE TRIAL COURT PERMITTED THE STATE TO SHOW THE JURY A VIDEO OF AN ALLEGED ROBBERY OF A GAS STATION THAT OCCURRED IN PORTAGE COUNTY.

{¶5}    In his fifth assignment of error, Mr. Wheeler has argued that the trial court erred by admitting video footage of a robbery that was not at issue in this case because, according to Mr. Wheeler, the potential for prejudice substantially outweighed the probative value of the video in demonstrating identity.  Mr. Wheeler has also argued that the trial court's limiting instruction was not sufficient to alleviate the prejudice caused by the video.  We disagree.

**{¶6}** Under Evid.R. 404(B), evidence of other crimes, wrongs, or acts of the defendant is not admissible to prove that the defendant acted in conformity with the character demonstrated by the other acts, but other acts evidence may be admissible for different purposes. The Rule specifies, for example, that other acts evidence may be admitted for purposes "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evid.R. 404(B). The admission of other acts evidence is a three-step process:

> The first step is to consider whether the other acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Evid.R. 401. The next step is to consider whether evidence of the other crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other acts evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B). The third step is to consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice.

*State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, ¶ 20.

**{¶7}** When an appellant challenges the admission of other acts evidence, we review the trial court's decision for an abuse of discretion. *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, syllabus. Under this "deferential" standard, "[i]t is not sufficient for an appellate court to determine that a trial court abused its discretion simply because the appellate court might not have reached the same conclusion or is, itself, less persuaded by the trial court's reasoning process than by the countervailing arguments." *Id*. at ¶ 14. Instead, we consider whether the trial court's decision lacked a "sound reasoning process." *Id*., quoting *AAAA Ents. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161 (1990).

**{¶8}** Mr. Wheeler has not argued that the surveillance video was irrelevant or that it was offered for a purpose other than those permitted by Evid.R. 404(B), but he has argued that the probative value of the video footage is substantially outweighed by the danger of unfair

prejudice to him that could result. A limiting instruction serves to minimize the likelihood that evidence of other acts will result in undue prejudice. *State v. Jones*, 135 Ohio St.3d 10, 2012-Ohio-5677, ¶ 194. When a trial court provides a limiting instruction in connection with the admission of other acts evidence, this Court presumes that the jury followed the instruction. *Williams* at ¶ 23.

{¶9} In this case, Officer Crockett identified a stolen vehicle driving west on Interstate 76 at a high rate of speed and pursued that vehicle until it crashed into a tree. A black and silver gun and latex gloves were found in the car, and police also found a pack of Newport cigarettes nearby. Officer Ashley Freed, who responded at the scene of the crash, confirmed that a gas station located near Interstate 76 to the east had been robbed close to the time of the chase. Corvel Benson testified that he had been the driver of the car at issue, explained that he had driven the car from the scene of the gas station robbery, and identified Mr. Wheeler as the person who went into the gas station and the passenger in the vehicle at the time of the crash. In this context, the surveillance video depicts an individual that matches the general description of Mr. Wheeler wearing latex gloves and brandishing a black and silver gun, thus tending to identify Mr. Wheeler as the passenger who fled the car after the crash and eluded capture. Officer Crockett acknowledged that Mr. Wheeler and Mr. Benson are similar in appearance, but testified that he could identify Mr. Wheeler from the video.

{¶10} The trial court offered a limiting instruction before the surveillance video was played:

> Ladies and gentlemen, you are about to view a video of a criminal act that took place in another jurisdiction. This evidence is being shown to you in this case for a limited purpose, by the State, that purpose being identification.

The defendant is not charged in this case with any offense that relates to the video, and you are not to consider the video for any purpose – any other purpose but for the limited purpose for which the State is submitting the video to you.

The trial court also cautioned the jury about its use of the video during jury instructions:

Evidence was received by way of video, marked as State's Exhibit 1, of a criminal act that took place in another jurisdiction. That evidence was received only for a limited purpose.

It was not received, and you may not consider it, to prove the character of the defendant in order to show that he acted in conformity or in accordance with that character.

You may consider the evidence solely for the purpose of deciding whether it proves the identity of the person who committed the offense in this trial. That evidence, State's Exhibit 1, cannot be considered for any other purpose.

The trial court's repeated instruction in this case served to minimize the risk that undue prejudice would result from the jury's consideration of the surveillance video, and the jury is presumed to have abided by the trial court's instruction. *Jones*, 2012-Ohio-5677, at ¶ 194. In view of this instruction, and in light of the probative value of the surveillance video in demonstrating that Mr. Wheeler was the passenger who fled the scene of the car crash on foot, we conclude that the trial court did not abuse its discretion by admitting the video. *See id.*

{¶11} Mr. Wheeler's fifth assignment of error is overruled.

### ASSIGNMENT OF ERROR I

THE EVIDENCE IS INSUFFICIENT TO SUSTAIN A FINDING OF GUILTY FOR HAVING WEAPONS WHILE UNDER DISABILITY AND OBSTRUCTING OFFICIAL BUSINESS.

### ASSIGNMENT OF ERROR II

THE VERDICT OF GUILTY FOR HAVING WEAPONS WHILE UNDER DISABILITY AND OBSTRUCTING OFFIC[IAL] BUSINESS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

## ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED BY NOT GRANTING DEFENSE COUNSEL'S CRIMINAL RULE 29 MOTION.

{¶12} Mr. Wheeler's first, second, and third assignments of error are that his convictions are based on insufficient evidence and are against the manifest weight of the evidence. Specifically, his argument with respect to each of these three assignments of error is that the evidence identifying him as the passenger in the vehicle driven by Mr. Benson is not credible and that the jury lost its way in believing the State's witnesses. As such, the substance of each of these three assignments of error is that Mr. Wheeler's convictions are against the manifest weight of the evidence. *See Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 10-12.

{¶13} When considering whether a conviction is against the manifest weight of the evidence, this Court must:

> review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). A reversal on this basis is reserved for the exceptional case in which the evidence weighs heavily against the conviction. *Id.*, citing *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). In our analysis, we are mindful that "[c]ircumstantial evidence and direct evidence inherently possess the same probative value[.]" *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph one of the syllabus. As with any element of an offense, identity may be proved by direct or circumstantial evidence, which do not differ with respect to probative value. *State v. Gibson*, 9th Dist. Summit No. 23881, 2008-Ohio-410, ¶ 8.

{¶14} R.C. 2923.13 prohibits having weapons while under a disability, and the statute provides, in part:

> Unless relieved from disability under operation of law or legal process, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply:
>
> * * *
>
> (2) The person is under indictment for or has been convicted of any felony offense of violence or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense of violence.
>
> (3) The person is under indictment for or has been convicted of any felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse.

R.C. 2921.31(A), which prohibits obstructing official business, provides that "[n]o person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties." Fleeing from police may constitute an "affirmative interference with police business" that rises to the level of obstructing official business. *State v. Griffin*, 9th Dist. Summit No. 19278, 1999 WL 334781, *2 (May 26, 1999). *See also State v. Johnson*, 9th Dist. Summit No. 26914, 2014-Ohio-2856, ¶ 17, citing *Griffin* at *2.

{¶15} Officer Crockett testified that he observed a vehicle traveling westbound on Interstate 76 at eighty-five miles per hour. Knowing that officers had been advised to be on the lookout for a black Ford Taurus as the result of a robbery that occurred to the east of his location, Officer Crockett caught up to the vehicle, verified that it was stolen, and kept it within his line of sight while waiting for backup. Officer Crockett recalled that when the vehicle exited the freeway while maintaining a high rate of speed, he initiated pursuit with lights and sirens. He testified that the driver eventually lost control and crashed into a tree and that he saw the

passenger run to the right behind some apartments. Although the passenger eluded capture, Officer Crocket testified that police detained the driver of the car, Mr. Benson, who confessed to his involvement and identified Mr. Wheeler as the passenger. Officer Matthew Akers pursued Mr. Benson on foot after the car accident. Officer Akers testified that he saw Mr. Benson remove a pair of latex gloves, and he recalled that Mr. Benson was found with a pack of Newport cigarettes.

{¶16} Officer Ashley Freed, who arrived at the scene of the car crash while officers were pursuing the passenger on foot, noticed latex gloves and a gun on the front seat of the car. Officer Freed testified that, because he assumed that evidence had been used in a robbery and knew that the vehicle had been travelling westbound on Interstate 76 at a high rate of speed, he contacted the police department in a jurisdiction to the east to inquire whether there had been a robbery that preceded the crash. As a result of his inquiry, Officer Freed learned that a Speedway gas station at State Route 43 and Interstate 76 had been robbed during the time frame at issue. A Brimfield Township police officer testified that the suspect in the robbery was wearing "surgical-type gloves" and carried a "black and silver gun[.]" Photographs from the crash scene that were admitted into evidence depict latex gloves, a black baseball cap, and a gun with a wooden grip and a black and silver barrel. The surveillance video introduced by the State for purposes of proving identity depicts a man in a gray hooded sweatshirt brandishing a firearm in his right hand. The man is wearing a black baseball cap underneath the hood of the sweatshirt.

{¶17} After entering a guilty plea with respect to his own involvement, Mr. Benson testified during Mr. Wheeler's trial. According to Mr. Benson, he and Wheeler were together on the night in question. Mr. Benson testified that he waited in driver's seat of the car while Mr. Wheeler entered a Speedway station with a gun and, when Mr. Wheeler returned to the car, that

he drove west toward Akron at a high rate of speed. Mr. Benson stated that when he crashed near Park Lane Apartments, he "bailed" from the car and did not see where Mr. Wheeler fled. He also testified that he did not touch the gun during the evening's events. Mr. Benson acknowledged his own extensive criminal record and admitted that he had been offered a plea agreement in exchange for his testimony at Mr. Wheeler's trial. He also confirmed that although he and Mr. Wheeler are cousins, he blamed Mr. Wheeler for an incident that resulted in him and his twin brother serving time in prison.

{¶18} Mr. Wheeler testified in his own defense. He maintained that he was not with Mr. Benson on the evening in question and, in fact, that he and Mr. Benson had no contact after Mr. Benson's release from prison other than a family gathering. Mr. Wheeler explained that Mr. Benson held a grudge against him as a result of a prior case in which police told family members that Mr. Wheeler testified against Mr. Benson's twin brother. Mr. Wheeler claimed that Mr. Benson was placing the blame for this incident on him as a result. Mr. Wheeler acknowledged that the man depicted in the surveillance video resembled him, but testified that the man looked like Mr. Benson as well. In addition, Mr. Wheeler claimed that he could not have been the man depicted in the video footage because, at the time of the incident, his right hand was in a cast. No evidence was introduced to corroborate this claim.

{¶19} As Mr. Wheeler points out, the fact that Mr. Benson, the only eyewitness who identified Mr. Wheeler, holds a grudge against him bears on Mr. Benson's credibility. On the other hand, the credibility of Mr. Wheeler's own, uncorroborated testimony that he wore a cast on his right hand on the date in question could also be questioned. Our ability to consider the surveillance video admitted into evidence for purposes of identifying Mr. Wheeler as the passenger in the vehicle is hampered for a simple reason: no one introduced a photograph of Mr.

Wheeler into evidence. Without such a photograph, this Court cannot adequately evaluate the video with respect to identity because, unlike the jury and the trial court below who observed Mr. Wheeler in person, we have no standard by which to evaluate the video. Nonetheless, this Court has reviewed the entire record and has considered the credibility of the witnesses, and we cannot conclude that this is the exceptional case in which a new trial is warranted.

{¶20} Mr. Wheeler's first, second, and third assignments of error are overruled.

## ASSIGNMENT OF ERROR IV

[MR. WHEELER] RECEIVED INEFFECTIVE ASSISTANCE FROM HIS TRIAL COUNSEL.

{¶21} In his fourth assignment of error, Mr. Wheeler argues that his attorney was ineffective because he did not renew a Crim.R. 29 motion at the close of the evidence; he did not highlight pertinent questions bearing on credibility during his closing argument; and, according to Mr. Wheeler, he equivocated on the possibility that his client committed the crimes at issue. We disagree.

{¶22} In order to demonstrate ineffective assistance of counsel, a defendant most show (1) deficiency in the performance of counsel "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and (2) that the errors made by counsel were "so serious as to deprive the defendant of a fair trial[.]" *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A defendant must demonstrate prejudice by showing that, but for counsel's errors, there is a reasonable possibility that the outcome of the trial would have been different. *Id*. at 694. In applying this test, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Id.* at 689.

{¶23} Mr. Wheeler's first proposition is that trial counsel was ineffective because he failed to renew a Crim.R. 29 motion at the close of all of the evidence. Mr. Wheeler has provided no argument with respect to this assertion. Nonetheless we note that at the close of the State's case-in-chief, trial counsel made a Crim.R. 29 motion with respect to the charge of improperly handling firearms only, and the trial court granted the motion. In other words, there was no pending Crim.R. 29 motion for trial counsel to renew, and this aspect of Mr. Wheeler's assignment of error is not well taken.

{¶24} Mr. Wheeler has also argued that trial counsel was ineffective because his closing argument failed to highlight weaknesses in the State's case and equivocated on the identity of the person depicted in the surveillance video. The manner in which defense counsel chooses to conduct closing argument is an element of trial strategy. *State v. Smith*, 9th Dist. Summit No. 23542, 2007-Ohio-5119, ¶ 18. *See also State v. Ahmed*, 103 Ohio St.3d 27, 2004-Ohio-4190, ¶ 160; *State v. Myers*, 97 Ohio St.3d 335, 2002-Ohio-6658, ¶ 155. As such, it "must be accorded deference and cannot be examined through the distorting effect of hindsight." *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶ 115.

{¶25} When considered in its entirety, it is apparent that trial counsel used the closing argument as an opportunity to create reasonable doubt in the minds of the jurors about the identity of the passenger in Mr. Benson's car. Counsel highlighted Mr. Benson's criminal record and reiterated that he had reason to hold a grudge against Mr. Wheeler. He emphasized that no physical evidence connected Mr. Wheeler to the charges, and that only Mr. Benson identified Mr. Wheeler to the police. Mr. Wheeler has argued that counsel's comments regarding the surveillance video compromised his defense, but when viewed in the context of counsel's

attempt to demonstrate reasonable doubt, it is apparent that these comments are also within counsel's trial strategy. In this respect, counsel stated:

> This might be [Mr. Wheeler]. I honestly can't tell. And I sat across from him many, many times in the past couple of months, and I don't know. I honestly don't know. I don't know if that is him or not. He tells me it is not.
>
> Sometimes I look at the pictures and I think that it is; and sometimes I look at the pictures and I think that it's not. And all I know is that every time he tells me, every time we talk about it, he says it's not. I do know that.

Counsel's statements refer to the surveillance video and to still frame photographs from that video. Neither are clear depictions of the subject. Mr. Wheeler's own testimony acknowledged that he looked like the man in the video, but he pointed out that Mr. Benson did as well. Counsel's statement acknowledged what Mr. Wheeler himself admitted, but attempted to create reasonable doubt in the minds of the jurors by emphasizing the ambiguity of the pictures and the fact that he found them inconclusive despite the fact that he had spent time with Mr. Wheeler face-to-face – an implicit contrast with the testimony of Officer Crockett, who stated that he *could* recognize Mr. Wheeler from the video. Counsel's statement also highlighted that although the photographs of the subject were not clear, Mr. Wheeler did not waver in maintaining that they did not depict him.

{¶26} Having considered trial counsel's closing argument in its entirety, we cannot conclude that counsel's trial strategy was deficient or that the result of the trial would likely be different but for his conduct. Mr. Wheeler's fourth assignment of error is overruled.

### ASSIGNMENT OF ERROR VI

THE TRIAL COURT COMMITTED PREJUDICIAL ERROR WHEN IT ABUSED ITS DISCRETION AND SENTENCED [MR. WHEELER] TO THE MAXIMUM PRISON TERM OF THIRTY-SIX MONTHS.

{¶27} In Mr. Wheeler's final assignment of error, he has argued that the trial court erred by sentencing him to the maximum applicable prison term for having weapons while under

disability when a minimum sentence would have accomplished the purposes of felony sentencing. This Court does not agree.

**{¶28}** In *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, a plurality of the Ohio Supreme Court concluded that appellate courts should use a two-step process when reviewing felony sentences. *Id*. at ¶ 26. In the first step, this Court reviews the sentence de novo to determine whether the trial court complied with applicable statutes and rules in imposing the sentence. *Id*. In the second step, we must review the trial court's decision to impose a particular sentence for an abuse of discretion. *Id*. *See also State v. Clayton*, 9th Dist. Summit No. 26910, 2014-Ohio-2165, ¶ 43.

**{¶29}** R.C. 2929.11(A) requires sentencing decisions to be guided by "the overriding purposes of felony sentencing[,]" which are "to protect the public from future crime by the offender and others and to punish the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." A sentencing court must consider the need to incapacitate the offender, to deter future criminal conduct by the offender and others, to rehabilitate the offender, and to make restitution to the victim and the public at large. *Id*. A felony sentence must be reasonably calculated to achieve these purposes "commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders." R.C. 2929.11(B).

**{¶30}** The trial court sentenced Mr. Wheeler to a prison term of thirty-six months for the offense of having weapons while under disability, a violation of R.C. 2923.13(A). This offense is a third-degree felony. R.C. 2923.13(B). Pursuant to R.C. 2929.14(A)(3)(b), the statutory range of possible sentences is "nine, twelve, eighteen, twenty-four, thirty, or thirty-six months."

Mr. Wheeler's sentence falls within the permissible statutory range. The record reflects that the trial court gave ample consideration to the overriding purposes of sentencing set forth in R.C. 2929.11(A). Accordingly, we conclude that the trial court complied with the applicable laws in imposing Mr. Wheeler's thirty-six month prison term.

{¶31} Our review of the record also leads us to conclude that the trial court did not abuse its discretion by imposing this particular sentence upon Mr. Wheeler. The trial court considered Mr. Wheeler's considerable criminal record and the fact that past imprisonment had not deterred him from committing felonies in close proximity to his release from prison. The trial also commented on Mr. Wheeler's lack of remorse and amenability to rehabilitation:

> You are a dangerous man, sir. Rather than having any remorse for it, you seem to have a sense of entitlement about it. You make excuses, and you blame everyone else. And since the smaller amount of time makes no difference, the only way I can protect society is to put you in there as long as I can.

Under these circumstances, we cannot conclude that the trial court abused its discretion by imposing the maximum sentence of thirty-six months for having a weapon under disability.

{¶32} Mr. Wheeler's sixth assignment of error is overruled.

III.

{¶33} Mr. Wheeler's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
CARLA MOORE
FOR THE COURT

HENSAL, P. J.
SCHAFER, J.
CONCUR.

APPEARANCES:

JAMES W. ARMSTRONG, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.