[Cite as *State v. Shank*, 2016-Ohio-7819.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| STATE OF OHIO | C.A. No. 14CA0090-M |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| PATRICK SHANK | COURT OF COMMON PLEAS COUNTY OF MEDINA, OHIO |
| Appellant | CASE No. 12-CR-0696 |

DECISION AND JOURNAL ENTRY

Dated: November 21, 2016

MOORE, Judge.

{¶1} Defendant, Patrick J. Shank, appeals from his convictions in the Medina County Court of Common Pleas. This Court affirms.

I.

{¶2} In 2012, Mr. Shank was indicted on ten counts of rape in violation of R.C. 2907.02(A)(2), and two counts of rape in violation of R.C. 2907.02(A)(1)(c). Mr. Shank pleaded not guilty and thereafter waived his right to a jury trial. The case proceeded to a bench trial. The trial court found Mr. Shank guilty of rape as contained in Counts One, Two, and Eight of the indictment, and guilty of the lesser included offense of sexual battery with respect to Counts Three through Seven and Nine through Twelve of the indictment. Thereafter, the trial court sentenced Mr. Shank to an aggregate of nine years of incarceration to be served consecutively to a sentence imposed in a prior, separate case.

{¶3} Mr. Shank timely appealed from the sentencing entry, and he now raises five assignments of error for our review. We have re-ordered the assignments of error to facilitate our discussion.

II.

**ASSIGNMENT OF ERROR II**

THE [TRIAL COURT'S] AFFIRMATIVE FINDING THAT [MR. SHANK] COMMITTED THE OFFENSES IS NOT SUPPORTED BY EVIDENCE SUFFICIENT TO SATISFY THE REQUIREMENTS OF THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION.

{¶4} In his second assignment of error, Mr. Shank argues that his convictions are not support by sufficient evidence. We disagree.

{¶5} The issue of whether a conviction is supported by sufficient evidence is a question of law, which we review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). When considering a challenge to the sufficiency of the evidence, the court must determine whether the prosecution has met its burden of production. *Id.* at 390, (Cook, J. concurring). In making this determination, an appellate court must view the evidence in the light most favorable to the prosecution:

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "In essence, sufficiency is a test of adequacy." *Thompkins* at 386.

{¶6} Here, the trial court found Mr. Shank guilty of rape in violation of R.C. 2907.02(A)(2) and R.C. 2907.02(A)(1)(c) with respect to an incident occurring on or about June 10, 2003, as alleged in Counts One and Two of the indictment. The trial court also found Mr. Shank guilty of rape in violation of R.C. 2907.02(A)(1)(c) for an incident occurring on or about May 8, 2004, as alleged in Count Eight of the indictment. R.C. 2907.02(A)(2) provides that "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." R.C. 2907.02(A)(1)(c) provides that "[n]o person shall engage in sexual conduct with another who is not the spouse of the offender * * * when * * * [t]he other person's ability to resist or consent is substantially impaired because of a mental or physical condition * * * and the offender knows or has reasonable cause to believe that the other person's ability to resist or consent is substantially impaired because of a mental or physical condition * * *."

> Substantial impairment is not defined for purposes of this statute, nor has the Ohio Supreme Court ever defined the term for purposes of addressing the sufficiency of evidence. In a case that raised a different question, however, the Court noted that: "The phrase 'substantially impaired' * * * must be given the meaning generally understood in common usage. * * * [It] must be established by demonstrating a present reduction, diminution or decrease in the victim's ability, either to appraise the nature of his conduct or to control his conduct. This is distinguishable from a general deficit in ability to cope[.]"

*State v. Daniels*, 9th Dist. Summit No. 25808, 2011-Ohio-6414, ¶ 6, quoting *State v. Zeh*, 31 Ohio St.3d 99, 103-104 (1987). Expert testimony is not required to establish substantial impairment, and the existence of a substantial impairment may be proven by the victim's testimony. *Daniels* at ¶ 6.

{¶7} The trial court further found Mr. Shank guilty of nine counts of sexual battery in violation of R.C. 2907.03(A)(1), as a lesser included offense of rape as charged in Counts Three through Seven and Nine through Twelve of the indictment, which related to four incidents

occurring during the approximate time period of June 11, 2003 through June 19, 2003, one incident occurring on or about May 8, 2004, and four incidents occurring during the approximate time period of June 1, 2004 through August 31, 2004. R.C. 2907.03(A)(1) provides that "[n]o person shall engage in sexual conduct with another, not the spouse of the offender, when * * * [t]he offender knowingly coerces the other person to submit by any means that would prevent resistance by a person of ordinary resolution."

{¶8} In support of the charges at trial, the State presented the testimony of several individuals, including the victim, A.M., who was then twenty-four years old. A.M. testified that her childhood home was located across the street from the Shank residence. In 2002, when she was twelve years old, A.M. began to babysit Mr. Shank's children. In June of 2003, A.M. accompanied the Shanks to a birthday party. Mr. Shank's wife and children left the party early, and A.M. stayed with Mr. Shank, who gave her and other children mixed alcoholic drinks. She could not recall how many drinks she consumed, but she became very intoxicated. She left the party with Mr. Shank, and she was so intoxicated during the car ride that she was unable to focus her vision on anything outside the car window because she felt as though she was spinning. Mr. Shank took her back to his house after the party, and he told her to wait in the car so that he could open the garage door and not wake up his wife and children. When he opened the door, she and Mr. Shank entered the house through the garage. Mr. Shank, who was a member of a heavy metal band, directed A.M. to go to the recording studio, which was a small room in the Shank house. In the studio, Mr. Shank told A.M. to lay down, and she laid on the floor. By this point, A.M. recalled that she was "blacking in and out[.]" She remembered Mr. Shank kissing her, and he removed her pants and underwear and forced her to have vaginal intercourse. She

made no noise because she did not want Mrs. Shank or the children to come downstairs and see them. A.M. then slept on the Shanks' couch and returned home the next morning.

{¶9} The next day, A.M. returned to the Shanks' house to babysit the Shank children, and Mr. Shank came home early from work. Mr. Shank told A.M. that he wanted to talk to her, and he took her into his and Mrs. Shank's bedroom. He then had vaginal intercourse with her again. A.M. maintained that Mr. Shank had sex with her three or four times that week.

{¶10} A.M. further testified that, after the June 2003 incidents, Mr. Shank continued to have sex with her a few times every week, totaling over 100 times. She recalled that she attended Mr. Shank's band practices, and she also started going to Mr. Shank's band shows. Several times her best friend, E.B., who was also thirteen years old, would accompany her. Mr. Shank's connections at the band's venue gave the girls wristbands that indicated that they were over twenty-one years old. When they first started attending the band shows, Mr. Shank would get the girls alcohol. There was never a show that A.M. attended with him where she did not drink alcohol, and she always drank to the point of intoxication.

{¶11} On May 8, 2004, when she was fourteen years old, A.M. recalled that she and E.B accompanied Mr. Shank and Jimmy Black, one of Mr. Shank's bandmates, to Mr. Black's apartment in Cleveland, Ohio. Although E.B. could not recall where they were prior to going to Mr. Black's apartment, she remembered that Mr. Shank and Mr. Black provided the girls alcohol, and the girls became intoxicated. At the apartment, Mr. Shank and Mr. Black continued to provide the girls with beer. Thereafter, Mr. Black and E.B. went into a bedroom, and A.M. and Mr. Shank were in the living room. While they were in the living room, Mr. Shank removed A.M.'s pants, and he was lying on top of her on the floor. While Mr. Shank was on top of A.M.,

either Mr. Black or E.B. walked out of the bedroom into the living room. Mr. Shank then led A.M. into a different bedroom. In that bedroom, Mr. Shank had vaginal intercourse with A.M.

{¶12} A.M. further recalled that, in June 2004, Mr. Shank came to A.M.'s house while her mother was at work. He knocked on the door, saying that he knew that A.M. was home. While he was knocking, A.M. sat on her steps, crying, and hoping that he would go away. However, she acknowledged that she must have let him in the house, because he did end up in the house. Mr. Shank then had vaginal intercourse with A.M. on her bed. He then wanted her to lay naked with him for about an hour before he left. A.M. maintained that this occurred four or five times in June 2004 in her bedroom.

{¶13} A.M. maintained that she never voluntarily had sex with Mr. Shank. Although Mr. Shank never threatened to injure her during these incidents, she was always scared because he was much larger than her. He would also tell her that no one would believe her if she said anything about it. A.M. did not report the incidents until after she had read a newspaper article in 2012, when Mr. Shank was on trial for charges related to illegal sexual behavior against another individual. She then informed her mother and police as to Mr. Shank's above described conduct toward her that occurred in 2003 and 2004.

{¶14} In his merit brief, Mr. Shank does not specifically challenge, with citations to the record, the sufficiency of the evidence speaking to the particular elements of the offenses for which he was convicted. *See* App.R. 16(A)(7). Nonetheless, we have reviewed the record, and, when viewing A.M.'s testimony in the light most favorable to the State, we conclude that there was sufficient evidence to establish that Mr. Shank committed the offenses for which he was found guilty. With respect to the finding of guilt on Counts One and Two of the indictment, A.M.'s testimony indicated that Mr. Shank forced her to have sex with him on or about June 10,

2003 in violation of R.C. 2907.02(A)(2), and that he did so after causing her to become substantially impaired by providing her with alcohol, in violation of R.C. 2907.02(A)(1)(c). With respect to the finding of guilt as to rape as contained in Count Eight of the indictment, A.M. testified that Mr. Shank had sex with her on May 8, 2004, after he provided her with a significant amount of alcohol, which she again consumed to the point of intoxication, in violation of R.C. 2907.02(A)(1)(c). With respect to the lesser included offense of sexual battery, relative to Counts Three though Seven and Counts Nine through Twelve of the indictment, A.M. testified that Mr. Shank had sex with her four or five times in June 2003 after the first incident, that he had sex with her on May 8, 2004, and that he had sex with her four or five times in June 2004. Moreover, she maintained that she did not engage voluntarily in sexual conduct with Mr. Shank, and she was scared of Mr. Shank's size compared to her own. *See* R.C. 2907.03(A)(1); *see also State v. Ortiz*, 185 Ohio App.3d 733, 2010-Ohio-38, ¶ 15 (9th Dist.) (where rape under R.C. 2907.02(A)(2) requires a mens rea of purposely and proof of force, sexual battery under R.C. 2907.03(A)(1) requires a mens rea of knowingly and proof of coercion). Viewed in the light most favorable to the State, we conclude there was sufficient evidence to support the nine convictions for sexual battery.

{¶15} Further, with respect to the incident occurring on May 8, 2004, the evidence established that this incident occurred in Cleveland, Ohio. Mr. Shank maintains that there was insufficient evidence of a course of conduct to permit this charge of an out-of-county offense to be tried in Medina County.

{¶16} "Although it is not a material element of the offense charged, venue is a fact which must be proved in criminal prosecutions unless it is waived by the defendant. The standard of proof is beyond a reasonable doubt, although venue need not be proved in express

terms so long as it is established by all the facts and circumstances in the case." (Internal citation omitted.) *State v. Headley*, 6 Ohio St.3d 475, 477 (1983).

{¶17} Here, the State maintained that Mr. Shank could be convicted in Medina County for the incident occurring in Cleveland, Ohio, because he engaged in a continuous course of criminal conduct. R.C. 2901.12(H) provides, in part, as follows:

> When an offender, as part of a course of criminal conduct, commits offenses in different jurisdictions, the offender may be tried for all of those offenses in any jurisdiction in which one of those offenses or any element of one of those offenses occurred. Without limitation on the evidence that may be used to establish the course of criminal conduct, any of the following is prima-facie evidence of a course of criminal conduct:
>
> (1) The offenses involved the same victim, or victims of the same type or from the same group.
>
> (2) The offenses were committed by the offender in the offender's same employment, or capacity, or relationship to another.
>
> (3) The offenses were committed as part of the same transaction or chain of events, or in furtherance of the same purpose or objective.
>
> * * *
>
> (5) The offenses involved the same or a similar modus operandi.
>
> * * *.

R.C. 2901.12(H). "R.C. 2901.12(H) provides a sensible, efficient approach to justice by permitting one court to hear a matter which has roots in several court jurisdictions." *State v. Brown*, 9th Dist. Summit No. 25287, 2011-Ohio-1041, ¶ 39, quoting *State v. Lydicowens*, 9th Dist. Summit No. 14054, 1989 WL 140617, *6 (Nov. 22, 1989). *See also State v. Bates*, 9th Dist. Medina No. 12CA0046-M, 2013-Ohio-3565, ¶ 29-30. Here, it is undisputed that the alleged offenses in this case all involved the same victim, A.M., and thus there was prima facie proof of a continuing course of conduct pursuant to R.C. 2901.12(H)(1). Mr. Shank has not

developed an argument as to why the offenses do not constitute a course of criminal conduct, and we decline to construct an argument on his behalf. *See Bates* at ¶ 31, and App.R. 16(A)(7).

{¶18} Mr. Shank further maintains that the evidence was insufficient based upon "all of the inconsistent testimony in this case[,]" as set forth in his first assignment of error. In directing this Court to another assignment of error to support his argument, Mr. Shank fails to separately argue this portion of his second assignment of error as required by App.R. 16(A)(7). *See also* App.R. 12(A)(2). Nonetheless, we note that the issue of inconsistent testimony challenges the credibility of witnesses, and thus it is an issue that speaks to the weight of the evidence, not the sufficiency of the evidence. Therefore, we reserve our review of the purported inconsistent testimony for our discussion of the first assignment of error, which follows.

{¶19} Accordingly, for the reasons stated above, Mr. Shank's second assignment of error is overruled.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED IN DEPRIVING [MR. SHANK] OF HIS RIGHT TO DUE PROCESS AND RIGHT TO A FAIR TRIAL BY ENTERING A JUDGMENT OF CONVICTION WHICH WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, IN VIOLATION OF THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE 1, SECTION 16 OF THE OHIO CONSTITUTION.

{¶20} In his first assignment of error, Mr. Shank argues that his convictions are against the manifest weight of the evidence. We disagree.

{¶21} When a defendant asserts that his conviction is against the manifest weight of the evidence:

an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).

{¶22} Here, Mr. Shank argues that his convictions for rape and sexual battery were against the manifest weight of the evidence because A.M.'s testimony was inconsistent with the testimony and evidence provided by the defense, because A.M. did not testify to a severe, distinguishing scar on Mr. Shank's genitals, and because the weight of the evidence did not establish that the May 8, 2004 incident was part of a course of criminal conduct. We will limit our review accordingly.

{¶23} In addition to the testimony of A.M. as set forth in our discussion of the second assignment of error above, A.M. further testified that Mr. Shank stopped attempting to have sex with her prior to the summer of 2005, at which point she believed that Mr. Shank began a sexual relationship with another neighbor, A.C.

{¶24} During cross-examination of A.M., she indicated that she had seen Mr. Shank naked during the incidents to which she had testified, and she had performed oral sex on Mr. Shank, but she stated that she had kept her eyes closed during oral sex. Defense counsel asked A.M. if she had noticed anything unusual about Mr. Shank's body and, particularly, his pubic area. A.M. responded that Mr. Shank's body was covered in tattoos and that he had a large penis.

{¶25} As part of its case in chief, the defense provided the testimony of Mrs. Shank, Mr. Shank's son, the Shanks' daughter, two neighbors of the Shanks', and a band member named Brian Klupp. Mrs. Shank testified that she has been married to Mr. Shank for twenty-five years. She confirmed that friends of their children would come to their house and that sometimes people would watch Mr. Shank's band practices in the garage, although they were mostly closed practices. Mrs. Shank maintained that there was no recording studio in their home in 2003, the

time during which A.M. alleged Mr. Shank had sex with her in the Shanks' home recording studio. Mrs. Shank denied that either she or Mr. Shank ever provided the children at their home with alcohol. Mrs. Shank further denied that A.M. ever babysat her children.

{¶26} In addition, Mrs. Shank reviewed defense exhibits which indicated the number of hours that she had worked during certain periods of time. On one exhibit, Mrs. Shank verified that her attendance schedule for the month of June 2004 demonstrated that she had taken eighty hours of family medical leave during that month, although Mrs. Shank could not remember why she had taken this leave. Mrs. Shank further reviewed exhibits consisting of pictures of Mr. Shank's genitals. Mrs. Shank noted that the pictures display that Mr. Shank has a scar on his testicles and his penis as a result of a childhood accident. These exhibits were submitted into evidence for the record, but sealed due to their personal nature.

{¶27} The Shanks' daughter testified that A.M. had never babysat her or her siblings. She also maintained that A.M. did not come to band practice because Mr. Shank never let anyone outside of the band members attend the practices. The Shanks' daughter also indicated that her parents never bought alcohol for her or her friends. Mr. Shank's oldest son, who had resided with the Shanks from 2008-2011, recalled that he hardly ever saw A.M. He maintained that he never saw A.M. drink at his house. On cross-examination, Mr. Shank's son indicated that the band practices were not closed to people outside the band. Two of the Shanks' neighbors, who were minors when they moved into the Shanks' neighborhood in 2005, also testified that the Shanks never provided them with alcohol. One neighbor, A.C., denied that Mr. Shank ever acted inappropriately toward her, despite A.M.'s belief to the contrary as relayed in her testimony above.

{¶28} Mr. Klupp also testified that that there was no drinking at the Shanks' house during band practices or by the band members during the band's shows, except for Mr. Black, who would sometimes bring a six-pack of beer to practices and would drink at the shows. Mr. Klupp recalled that there was a recording studio in the Shanks' home in the spring of 2003, when he joined the band. Mr. Klupp recalled that A.M. would sometimes attend band practices, but he never got the impression that A.M. and Mr. Shank were sexually involved. Instead, Mr. Klupp maintained that Mr. Shank treated A.M. like one of his children.

{¶29} In support of his argument that his convictions are against the weight of the evidence, Mr. Shank points to several inconsistencies between A.M.'s testimony and the testimony of the defense witnesses and exhibits. While we recognize that there are differences in the testimony of A.M. and the testimony of defense witnesses, the trial court was "free to believe all, part, or none of the testimony of each witness." *Prince v. Jordan*, 9th Dist. Lorain No. 04CA008423, 2004-Ohio-7184, ¶ 35, citing *State v. Jackson*, 86 Ohio App.3d 29, 33 (4th Dist.1993). It is within the province of the trier of fact to reconcile inconsistencies in testimony because the finder of fact is present to "view witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *State v. Cook*, 9th Dist. Summit No. 21185, 2003-Ohio-727, ¶ 30, quoting *Giurbino v. Giurbino*, 89 Ohio App.3d 646, 659 (8th Dist.1993). "A conviction is not against the manifest weight because the [finder of fact] chose to credit the State's version of events." *State v. Peasley*, 9th Dist. Summit No. 25062, 2010-Ohio-4333, ¶ 18. Further, we note that there are inconsistencies in the testimony among the defense witnesses themselves, which the trial court may have considered when determining credibility. In addition, with respect to Mrs. Shank's testimony and the exhibit indicating that Mrs. Shank had taken eighty hours of medical leave in

June 2004, there is no indication that the incidents alleged did not occur during times that Mrs. Shank was working that month, and, moreover, A.M.'s testimony indicated that the assaults that occurred that month occurred at A.M.'s home. Further, with respect to A.M.'s failure to note Mr. Shank's scar, after review of the testimony and exhibits, we cannot say that a failure to notice or recall the scar necessarily belied A.M.'s credibility.

{¶30} Next, with specific reference to the May 8, 2014 incident in Cleveland, Ohio, Mr. Shank maintains that the evidence did not establish that the Cleveland, Ohio incident was part of an ongoing course of criminal conduct. *See* R.C. 2901.12(H). This argument is identical to the conclusory argument set forth in the second assignment of error on this issue (as discussed above), except that Mr. Shank further maintains in his first assignment of error that there was no course of criminal conduct because A.M. "made no allegations that anything happened in Medina County on that date[.]" However, Mr. Shank does not point this Court to any authority requiring that, to constitute a course of criminal conduct under R.C. 2901.12(H), the offenses at issue must occur on the same date. *See* App.R. 16(A)(7). We decline to develop an argument on his behalf.

{¶31} After independently reviewing the record, we cannot say the trial court clearly lost its way and created a manifest miscarriage of justice in finding Mr. Shank guilty of three counts of rape and nine counts of sexual battery. Accordingly, Mr. Shank's first assignment of error is overruled.

## ASSIGNMENT OF ERROR IV

THE TRIAL COURT ERRED WHEN IT ALLOWED IN EVIDENCE OF OTHER ACTS, IN VIOLATION OF EVID.R. 404(B).

{¶32} In his fourth assignment of error, Mr. Shank argues that the trial court erred in admitting evidence of other acts in violation of Evid.R. 404(B). We disagree.

**{¶33}** "Under Evid.R. 404(B), evidence of other crimes, wrongs, or acts of the defendant is not admissible to prove that the defendant acted in conformity with the character demonstrated by the other acts, but other acts evidence may be admissible for different purposes." *State v. Wheeler*, 9th Dist. Summit No. 27643, 2016-Ohio-15, ¶ 6. "The Rule specifies, for example, that other acts evidence may be admitted for purposes 'such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.'" *Id.*, quoting Evid.R. 404(B). Courts engage in a three-step process to determine the admissibility of other-acts evidence:

> The first step is to consider whether the other acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Evid.R. 401. The next step is to consider whether evidence of the other crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other acts evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B). The third step is to consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice.

*Wheeler* at ¶ 6, quoting *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, ¶ 20.

**{¶34}** "When an appellant challenges the admission of other acts evidence, we review the trial court's decision for an abuse of discretion." *Wheeler* at ¶ 7, citing *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, syllabus. "Under this 'deferential' standard, '[i]t is not sufficient for an appellate court to determine that a trial court abused its discretion simply because the appellate court might not have reached the same conclusion or is, itself, less persuaded by the trial court's reasoning process than by the countervailing arguments.'" *Wheeler* at ¶ 7, quoting *Morris* at ¶ 14. "Instead, we consider whether the trial court's decision lacked a 'sound reasoning process.'" *Wheeler* at ¶ 7, quoting *Morris* at ¶ 14, quoting *AAAA Ents. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161 (1990).

{¶35} During trial, the defense objected to the testimony of a witness for the State, R.A., who had purportedly been sexually assaulted by Mr. Shank when she was approximately thirteen or fourteen years old. The State indicated that R.A. would be testifying as to similar experiences as that of A.M. The trial court permitted the testimony, concluding that it was relevant, demonstrated a unique modus operandi, scheme or plan, and that the danger of unfair prejudice did not substantially outweigh the prejudicial effect.

{¶36} R.A. testified that she was friends with one of the Shank children, and she began going to the Shank home to visit when she was thirteen years old. At their house, she would sometimes consume alcohol that Mr. Shank provided her. Once, Mr. Shank came to pick her up, and when they were in the car he asked her about the manner in which she performed oral sex, and she was uncomfortable and did not answer him. R.A. stated that, when she was thirteen, another incident occurred when she was styling Mr. Shank's hair for a band show, at which time he pulled down his pants and asked her for oral sex, and she told him no. Mr. Shank then grabbed her and pulled her blue jeans down, and she told him to stop and left. On another occasion, R.A. was sleeping on Mr. Shank's couch, and he woke her up and took her to his recording studio, where he forced her legs apart and had vaginal intercourse with her. Another time, when others in the Shank home were asleep, R.A. was in the bathroom, and Mr. Shank took her into his adjoining bedroom and again forced her to have vaginal intercourse. On another occasion, when R.A. was thirteen or fourteen years old, she was at a party at the Shank residence and was sick from drinking too much alcohol. She remained in the downstairs bathroom after vomiting. While she was still in the bathroom, Mr. Shank entered the bathroom. Mr. Shank pulled R.A. up, held her against the door, and again forced her to have vaginal intercourse. On another occasion, Mr. Shank forced R.A. against a wall, pulled her pants down

and again forced her to have vaginal intercourse. R.A. maintained that Mr. Shank had told her not to tell anyone about these incidents because he could "mess up [her] life and just make it that no one would believe [her]."

{¶37} In his merit brief, Mr. Shank specifically argued that R.A.'s testimony should have been excluded because, where evidence demonstrates a scheme or plan, it is not permissible unless the identity of the perpetrator is at issue, and, here, identity was not an issue at trial. As Mr. Shank developed no other argument in his merit brief with respect to R.A.'s testimony, we will likewise limit our discussion to the second step of the *Williams* analysis pertaining to whether the evidence was admitted for a proper purpose. *See* App.R. 16(A)(7); *Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, at ¶ 20.

{¶38} In support of his argument that the trial court erred in admitting the other acts evidence, Mr. Shank cites to *State v. Morris*, 9th Dist. No. 09CA0022-M, 2012-Ohio-6151, where the lead opinion determined that the evidence of other acts was not admissible for the purpose of demonstrating identity because, it concluded that identity was not at issue. *Morris* at ¶ 26. However, in *Morris*, the lead opinion also recognized that, in *Williams*, the Ohio Supreme Court explained that, under Evid.R. 404(B), "evidence of other crimes, wrongs, or acts of an accused may be admissible to prove intent or plan, even if the identity of an accused or the immediate background of a crime *is not at issue*." (Emphasis added.) *Morris* at ¶ 27, quoting *Williams* at ¶ 2. However, the lead opinion found *Williams* distinguishable from the case before it. *See Morris* at ¶ 27-28.

{¶39} In Mr. Shank's appeal from his previous case, we addressed Mr. Shank's challenge to other acts evidence. In that case, Mr. Shank's charges included two counts of sexual battery and two counts of unlawful sexual conduct with a minor, with R.A. alleged to be

the victim of those charges. *State v. Shank*, 9th Dist. Medina No. 12CA0104-M, 2013-Ohio-5368, ¶ 6-7. At the trial, the State presented testimony of two other individuals who had spent time at the Shanks' home as teenagers. *Id.* at ¶ 8-12. Both testified as to incidents involving Mr. Shank's sexual behavior toward them which were not part of the charges in that case. *Id.* On appeal, Mr. Shank maintained that the testimony should not have been permitted. *Id.* at ¶ 14. Relying on *Williams*, we concluded that the trial court did not abuse its discretion in admitting the evidence, and we concluded that the testimony of the other two individuals tended to show Mr. Shank's motive and that he had a plan of targeting for sexual activity teenage girls who spent the night at his house after drinking alcohol. *Shank* at ¶ 19-20.

{¶40} Here, similarly, R.A.'s testimony indicated that the sexual behavior toward her, like that toward A.M., occurred when she was thirteen to fourteen years of age. Also similar to A.M., R.A. testified that she drank at Mr. Shank's home, and that one of the incidents occurred after she had become very intoxicated. Based upon the similarities in R.A.'s and A.M.'s accounts of Mr. Shank's behavior toward them, we conclude that the trial court did not abuse its discretion in concluding that R.A.'s testimony was admitted for the permissible purpose of demonstrating a common plan or scheme.

{¶41} Accordingly, Mr. Shank's fourth assignment of error is overruled.

## ASSIGNMENT OF ERROR III

[MR. SHANK'S] TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL BECAUSE HIS PERFORMANCE WAS DEFICIENT, AND THAT DEFICIENT PERFORMANCE PREJUDICED [MR. SHANK] SO AS TO DEPRIVE HIM OF HIS RIGHT TO DUE PROCESS AND A RIGHT TO A FAIR TRIAL.

**{¶42}** In his third assignment of error, Mr. Shank maintains that his trial counsel was ineffective for failing to allow Mr. Shank to testify on his own behalf and for failing to file a motion to change venue. We disagree.

**{¶43}** This Court must analyze claims of ineffective assistance of counsel under a standard of objective reasonableness. *See Strickland v. Washington*, 466 U.S. 668, 688 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 142 (1989). Under this standard, a defendant must show (1) deficiency in the performance of counsel "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment[,]" and (2) that the errors made by counsel were "so serious as to deprive the defendant of a fair trial[.]" *Strickland* at 687. A defendant must demonstrate prejudice by showing that, but for counsel's errors, there is a reasonable probability that the outcome of the trial would have been different. *Id.* at 694. In applying this test, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Id.* at 689. This Court need not address both prongs of *Strickland* where an appellant fails to prove either prong. *See State v. Ray*, 9th Dist. Summit No. 22459, 2005-Ohio-4941, ¶ 10.

**{¶44}** In support of his argument that trial counsel was ineffective by preventing him from testifying on his own behalf, Mr. Shank maintains, without citation to the record, that he indicated to his counsel numerous times during the trial that he wanted to testify. He further maintains that, if he had testified, he would have given his version of events that differs significantly from that of the victim and her witnesses. However, there is no indication *in the record* that counsel advised Mr. Shank to not testify, nor are there any apparent reasons that counsel may have had for not advising Mr. Shank to testify. Finally, it cannot be discerned *from the record* to what Mr. Shank would have testified. Thus, Mr. Shank premises his argument that

counsel was ineffective for failing to permit him to testify on purported facts not appearing in the record. However, our review is confined to the record. *State v. Charlton*, 9th Dist. Lorain No. 12CA010206, 2014-Ohio-1330, ¶ 49, citing *State v. Zupancic*, 9th Dist. Wayne No. 12CA0065, 2013-Ohio-3072, ¶ 4 ("When affidavits or other proof outside the record are necessary to support an ineffective assistance claim, * * * it is not appropriate for consideration on direct appeal.").

**{¶45}** Next, with respect to Mr. Shank's claim that his trial counsel was ineffective for failing to file a motion to change venue, Mr. Shank bases his argument on the premise that the trial court was too familiar with the witnesses to guarantee a fair and impartial trial.

**{¶46}** Crim.R. 18(B) provides that "[u]pon the motion of any party or upon its own motion the court may transfer an action to any court having jurisdiction of the subject matter outside the county in which trial would otherwise be held, when it appears that a fair and impartial trial cannot be held in the court in which the action is pending."

**{¶47}** Assuming without deciding that a motion under Crim.R. 18(B) is properly employed in response to a particular trial court judge's purported familiarity with witnesses, we note that there is nothing in the record here that suggests that the trial court judge was familiar with any of the witnesses in this case. In the transcript, there is some discussion which, although not clear on this point, seems to indicate that the trial court judge may have once been a neighbor of someone related to the victim. Further, the transcript indicates that the judge's secretary was related through marriage to the victim's father, and she had once met the victim. However, there is nothing in the record to suggest, as Mr. Shank argues, that the trial court judge was familiar with any of the witnesses in this case.

**{¶48}** Accordingly, Mr. Shank's third assignment of error is overruled on the basis that he has not established deficient performance of counsel from the record before us.

**ASSIGNMENT OF ERROR V**

THE TRIAL COURT ERRED WHEN IT ENTERED THE GUILTY VERDICTS DESPITE THE CUMULATIVE ERRORS IN THE TRIAL.

{¶49} In his fifth assignment of error, Mr. Shank argues that the trial court erred in finding him guilty where there existed cumulative errors at trial. We disagree.

{¶50} Cumulative error exists only where the errors during trial actually "deprive[d] a defendant of the constitutional right to a fair trial." *State v. DeMarco*, 31 Ohio St.3d 191 (1987), paragraph two of the syllabus; *State v. Montgomery*, Slip Opinion No. 2016-Ohio-5487, ¶ 147. "[T]here can be no such thing as an error-free, perfect trial, and * * * the Constitution does not guarantee such a trial." *State v. Hill*, 75 Ohio St.3d 195, 212 (1996), quoting *United States v. Hasting*, 461 U.S. 499, 508-509 (1983). To support a claim of cumulative error, there must be multiple instances of harmless error. *State v. Garner*, 74 Ohio St.3d 49, 64 (1995).

{¶51} Here, we have found no instances of error in our discussion of the assignments of error above. Moreover, Mr. Shank generally maintains that cumulative error existed in this case because the trial court judge was "very hostile towards defense counsel[,]" which he follows with a citation to certain pages of the transcript. Without further development of this argument in his merit brief, we decline to address whether the trial court committed error, much less multiple instances of error, through its purportedly hostile actions toward defense counsel. *See* App.R. 16(A)(7).

{¶52} Accordingly, Mr. Shank's fifth assignment of error is overruled.

III.

{¶53} Mr. Shank's assignments of error are overruled. The judgment of the trial court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

CARLA MOORE
FOR THE COURT

SCHAFER, J.
CONCURS.

CARR, P. J.
CONCURS IN JUDGMENT ONLY.

APPEARANCES:

MICHAEL J. CHESELKA and SARAH R. COFTA, Attorneys at Law, for Appellant.

DEAN HOLMAN, Prosecuting Attorney, and MATTHEW A. KERN, Assistant Prosecuting Attorney, for Appellee.