[Cite as *State v. Debord*, 2020-Ohio-57.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLINTON COUNTY

| | | |
|---|---|---|
| STATE OF OHIO , | : | CASE NO. CA2019-03-003 |
| Appellee, | : | O P I N I O N<br>1/13/2020 |
| | : | |
| - vs - | | |
| | : | |
| LEE E. DEBORD, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM CLINTON COUNTY COURT OF COMMON PLEAS
Case No. CRI 18-500-280

Richard W. Moyer, Clinton County Prosecuting Attorney, Katie Wilkin, 103 East Main Street, Wilmington, Ohio 45177, for appellee

Craig A. Newburger, 477 Forest Edge Drive, South Lebanon, Ohio 45065, for appellant

**M. POWELL, J.**

{¶ 1}   Appellant, Lee Debord, appeals his conviction in the Clinton County Court of Common Pleas for felonious assault.

{¶ 2}   In July 2018, appellant, Roger Tucker ("Tucker"), appellant's girlfriend, Jennifer Shepherd ("Jen"), and Tucker's girlfriend, Crystal Coburn ("Crystal"), lived together

in appellant's house. On July 25, 2018, appellant told Tucker that Tucker and Crystal had to move out of the house that day. Upset by the request, Tucker walked into appellant's bedroom to confront him. Appellant struck Tucker three times with a machete, causing severe injuries to Tucker's left arm, right wrist, and the left side of his neck. In particular, the machete cut through Tucker's spinal column, resulting in a life-threatening, three-inch deep laceration to his neck. As a result of the machete attack, Tucker's left arm is paralyzed, his right fingers no longer straighten, and there is a long-term risk of stroke.

{¶ 3} After being assaulted by appellant, Tucker ran from appellant's home, exiting through the back door, and went to the home of next door neighbors William Kelsey ("Bill") and his brother Larry. Bill found Tucker outside his home, bleeding profusely from the neck, and started caring for him. A few minutes later, appellant came out of his house and yelled that he would cut off Tucker's head the next time. Bill advised Larry to "get a gun" to protect themselves and Tucker from appellant and to call 9-1-1. Appellant then fled the scene in a pickup truck. Two days later, sheriff deputies, based upon information provided to them, found the machete under a couch in appellant's home. Appellant was eventually apprehended on August 1, 2018, hiding in a Clermont County home.

{¶ 4} Appellant was indicted in August 2018 on two counts of felonious assault and one count of tampering with evidence. Appellant filed a notice of self-defense as an affirmative defense, and the case proceeded to a jury trial on March 5 - 7, 2019. Tucker, Tucker's surgeon, Crystal, brothers Bill and Larry, Clinton County Sheriff's Deputies Jonathan Bailey and Tim Smith, Detective Robert Gates, and other witnesses testified on behalf of the state. Appellant testified on his own behalf.

{¶ 5} Testimony at trial indicated that appellant, Tucker, Crystal, and Jen all used drugs in appellant's home. Trial testimony further indicated that although appellant forbade people from "shooting-up" in his house, Tucker did so on July 25, 2018, before the machete

- 2 -

attack.

{¶ 6}   Tucker denied threatening appellant or having a weapon or object in his hands when he walked into appellant's bedroom; Crystal confirmed such testimony.  Tucker further testified that appellant did not have the machete in his hands when Tucker first walked into appellant's bedroom.   Tucker, Crystal, and Bill all testified hearing appellant's postattack threat that he would cut off Tucker's head the next time.

{¶ 7}   The lead investigator, Detective Gates, testified he went to appellant's home where he took more than 100 photographs to document the location of the attack, the path Tucker took through and outside the house as he was fleeing, and the location of blood throughout the house and backyard.   The detective explained he took several photos of specific areas because the camera he was using did not have a wide angle lens.   The detective testified he was with Jen when appellant was apprehended and that "she kind of with a disappointed sound * * * said, 'you got him.'"  On direct examination, the detective further testified that after appellant was arrested, he was brought to an interview room and was advised of his Miranda rights.  At that point, appellant "indicated he wanted to speak with an attorney, * * * so I did not ask him any further questions."

{¶ 8}   Appellant testified that upon observing Tucker shooting up in the house on July 25, 2018, he told Tucker to move out of the house, then walked to the front door where he pretended to call the police on his cellphone.  Upon returning to his bedroom to get ready to go fishing with Jen, appellant heard Tucker yell "that he kills snitches and cop callers" and "I'm going to kill you, da, da, da."  Appellant testified that he was sitting on his bed at that point and that he had the machete in his hand because he was going to take it to go fishing.  Shortly after, Tucker darted into appellant's bedroom, swinging wildly, and "was on top of me so fast we started wrestling around and * * * I did strike him once because I saw the needle in his right hand."  Appellant claimed he did not know what happened after he

struck Tucker once with the machete but remembered Tucker dropping the needle out of his hand, bending down to pick it up, and then simply disappearing. Appellant testified he sat on his bed stunned, told Jen that Tucker had tried to kill him, and then left the house. Appellant testified that Tucker's preattack words and threat to kill him did not frighten him as he "didn't actually believe he would do it." The state did not cross-examine appellant.

{¶ 9} On March 7, 2019, the jury found appellant guilty as charged. During sentencing, the trial court merged the two felonious assault charges, sentenced appellant to eight years in prison for the felonious assault conviction and nine months in prison for the tampering with evidence conviction, and ordered that the prison terms be served consecutively.

{¶ 10} Appellant now appeals, raising three assignments of error. We address the second assignment of error out of order.

{¶ 11} Assignment of Error No. 2:

{¶ 12} THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY NOT APPLYING THE CHANGE IN R.C. 2901.05, SHIFTING THE BURDEN FROM APPELLANT TO THE STATE TO PROVE BEYOND A REASONABLE DOUBT THAT THE APPELLANT DID NOT USE THE FORCE IN SELF-DEFENSE.

{¶ 13} Traditionally, self-defense has been an affirmative defense which an accused must prove by a preponderance of the evidence. *State v. Gesell*, 12th Dist. Butler No. CA2005-08-367, 2006-Ohio-3621, ¶ 47. However, effective March 28, 2019, the General Assembly amended Ohio's self-defense statute, R.C. 2901.05, in Am.Sub.H.B. 228 ("H.B. 228"). Specifically, H.B. 228 amended R.C. 2901.05(B)(1) and placed the burden of proof on the state as follows: "the prosecution must prove beyond a reasonable doubt that the accused person did not use the force in self-defense, defense of another, or defense of that person's residence, as the case may be." Appellant argues that the trial court erred in not

applying the amendment to R.C. 2901.05(B)(1) during his March 3 - 5, 2019 trial.

{¶ 14} The assignment of error is overruled on the ground that appellant was "not entitled to [the] retroactive application of the burden-shifting changes made by the legislature to Ohio's self-defense statute, R.C. 2901.05, as a result of H.B. 228." *State v. Koch*, 2d Dist. Montgomery No. 28000, 2019-Ohio-4099, ¶ 103.

{¶ 15} Assignment of Error No. 1:

{¶ 16} APPELLANT'S SIXTH AMENDMENT RIGHT TO COUNSEL WAS VIOLATED BY TRIAL COUNSEL'S INADEQUATE PERFORMANCE.

{¶ 17} Appellant argues that trial counsel was ineffective because he (1) failed to move for retroactive application of the newly amended R.C. 2901.05(B)(1), or alternatively, for a brief continuance of the trial, (2) failed during closing argument to highlight appellant's testimony that appellant used the machete to fight off Tucker who was armed with a needle, (3) failed to object to the state's repetitive and cumulative crime scene photographs, (4) failed to object to "arguably and inadmissible testimony" regarding drug use in appellant's home, Larry's cumulative and repetitive testimony, appellant's whereabouts, and Jen's disappointment appellant was caught, (5) failed to object to Detective Gates' testimony that appellant invoked his right to counsel, (6) failed to object to the state's reference to appellant's failure to tell his side of the story in closing argument, and (7) failed to object to hearsay testimony regarding the location of the machete after the attack.

{¶ 18} To establish ineffective assistance of counsel, appellant must show (1) deficient performance by counsel, that is, performance falling below an objective standard of reasonable representation, and (2) prejudice, that is, a reasonable probability that but for counsel's errors, the result of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-688, 694, 104 S.Ct. 2052 (1984); *State v. Mundt*, 115 Ohio St.3d 22, 2007-Ohio-4836, ¶ 62. A "reasonable probability" is a probability that is "sufficient

- 5 -

to undermine confidence in the outcome." *Strickland* at 694. The failure to satisfy either prong of the *Strickland* test is fatal to an ineffective assistance of counsel claim. *State v. Petit*, 12th Dist. Madison No. CA2016-01-005, 2017-Ohio-633, ¶ 39.

{¶ 19} Trial counsel was not ineffective for failing to move for a brief continuance of the trial, or alternatively, for retroactive application of the newly amended R.C. 2901.05(B)(1) at appellant's trial. As stated above, the newly amended statute became effective on March 28, 2019, three weeks after appellant's trial. Appellant's belief the trial court would have granted a continuance on that ground is purely speculative, especially as the trial court could have deemed the requested delay to be dilatory or contrived. Moreover, applying an inapplicable burden of proof in anticipation of future law would have been improper. An attorney is not ineffective for failing to make futile motions or requests. *State v. Lott*, 51 Ohio St.3d 160, 175-176 (1990); *State v. Brown*, 12th Dist. Clermont No. CA2018-05-027, 2018-Ohio-4939, ¶ 11.

{¶ 20} Trial counsel was not ineffective during closing argument for failing to highlight testimony that appellant used the machete to fight off Tucker who was armed with a needle. Appellant was the last witness to testify at trial and the jury heard the testimony detailed above. Moreover, while trial counsel failed to highlight that part of appellant's testimony, he otherwise vigorously argued self-defense during closing argument. The manner defense counsel chooses to conduct closing argument is a matter of trial strategy and cannot be discredited simply because of a guilty verdict. *State v. Wisby*, 12th Dist. Clermont No. CA2012-06-049, 2013-Ohio-1307, ¶ 49. Furthermore, trial strategy "must be accorded deference and cannot be examined through the distorting effect of hindsight." *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶ 115; *State v. Wheeler*, 9th Dist. Summit No. 27643, 2016-Ohio-15, ¶ 24.

{¶ 21} Trial counsel was not ineffective for failing to object to the state's numerous

crime scene photographs. The state presented 70 photographs at trial. Five photographs depicted the location and severity of Tucker's wounds and were used during the surgeon's testimony. Six photographs depicted the location and condition of the machete. Seven photographs were taken by Deputy Bailey, the first officer on the scene, and depicted Tucker being cared for by Bill and the quantity of blood on Bill's wooden steps, and the quantity of blood in appellant's home near the back door. Finally, 52 photographs were taken by Detective Gates and depicted the quantity and location of blood throughout appellant's house and backyard, indicating where the attack took place and the path Tucker took when he fled appellant's home and went to Bill's house.

{¶ 22} While five of Detective Gates' photographs were arguably repetitive of five of Deputy Bailey's photographs, we find that the 70 crime scene photographs presented by the state were reasonably offered for different purposes, they were probative of appellant's criminal conduct and the sequence of events, and their probative value was not substantially outweighed by the prejudicial effect claimed by appellant. Accordingly, the photographs were admissible under Evid.R. 403. *State v. Herron*, 2d Dist. Montgomery No. 19894, 2004-Ohio-773, ¶ 66. Because the trial court could have admitted the photographs even if counsel had objected at trial, trial counsel did not render ineffective assistance by failing to object. *Id.*

{¶ 23} Trial counsel was not ineffective for failing to object to testimony from various witnesses throughout the trial. At the outset, we note that trial counsel is not ineffective for choosing, for tactical reasons, not to pursue every possible trial objection. *State v. Raypole,* 12th Dist. Fayette No. CA2014-05-009, 2015-Ohio-827, ¶ 24. Objections tend to disrupt the flow of a trial and are considered technical and bothersome by a jury. *Id.*; *State v. Hill*, 75 Ohio St.3d 195, 211 (1996). Moreover, appellant fails to establish that his counsel's performance fell "below an objective standard of reasonable representation," nor has he

demonstrated prejudice, that is, "a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraphs two and three of the syllabus.

{¶ 24} Turning to each claim individually, trial counsel was not ineffective for failing to object to Bill's personal knowledge of drug use in appellant's home for lack of foundation. Bill testified he was friends with appellant and was his neighbor. Appellant later testified on his own behalf and admitted drug use. Likewise, trial counsel was not ineffective for not objecting to Larry's testimony he was told by his brother Bill to get a gun. Bill's directive to Larry was first brought out during Bill's earlier direct examination. Subsequently, during Bill's cross-examination, trial counsel solicited testimony that Bill did in fact tell his brother to get a weapon to protect their home from appellant. Objecting to Larry's testimony would have been redundant as that fact was already known by the jury.

{¶ 25} We find no prejudice in trial counsel's failure to object to hearsay testimony regarding individuals' lack of knowledge of appellant's whereabouts after the attack. Such testimony had no bearing on the verdict and appellant does not so argue. Likewise, we find no error in trial counsel's failure to object to Detective Gates' testimony that Jen expressed disappointment about appellant's capture. Such statement was admissible under Evid.R. 803(3) as Jen's "then existing state of mind [or] emotion." Furthermore, such testimony had no bearing on the verdict and appellant does not so argue.

{¶ 26} Trial counsel was not ineffective for failing to object to both Detective Gates' testimony that appellant invoked his right to counsel and the prosecutor's reference to appellant's failure to tell his side of the story in closing argument. During closing argument, the prosecutor referenced appellant's prearrest silence when discussing the police finding appellant hiding in a house. The prosecutor argued, "Does he come out voluntarily? If he was truly scared and truly just wanted to be able to talk to someone before he told his story

don't you think if they are already in the home and you're standing up and you're going up to them and asking them, hey, I just want to tell you my part of the story. No, instead he lays on the ground[.]"

{¶ 27} Based upon the Ohio Supreme Court's decision in *State v. Leach*, 102 Ohio St.3d 135, 2004-Ohio-2147, we find that the state's use of appellant's post-arrest, post-*Miranda* invocation of counsel during the state's case-in-chief was improper. In *Leach*, the supreme court held that evidence of a defendant's post-arrest, post-*Miranda* statement that he wished to consult an attorney, whether offered for impeachment purposes or as substantive evidence of guilt, violates the Due Process Clauses of the state and federal constitutions. *Id.* at ¶ 18, 38. Likewise, we find that the prosecutor's reference to appellant's prearrest silence during closing argument was improper. Relying upon its holding in *Leach* that use of a defendant's prearrest silence as substantive evidence of guilt in the state's case-in-chief violates the Fifth Amendment privilege against self-incrimination, the supreme court held that "[s]tatements made in closing arguments concerning a defendant's protected prearrest silence are analogous to comments made during the case-in-chief. Such comments are clearly improper." *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, ¶ 159-160.

{¶ 28} It follows that trial counsel's performance was deficient and fell below an objective standard of reasonable representation when trial counsel did not object to the state's use of appellant's post-arrest, post-*Miranda* invocation of counsel during Detective Gates' direct examination and to the state's reference to appellant's prearrest silence during closing argument. However, appellant does not argue prejudice, that is, a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different. Rather, appellant "asks this Court to determine whether he was prejudiced by his trial counsel's deficient performance." Given Tucker's testimony regarding appellant's

felonious assault and the testimony of Crystal and Bill corroborating pertinent aspects of Tucker's testimony, we find that the state's evidence of appellant's guilt is compelling and that appellant cannot establish a reasonable probability that but for counsel's errors, the result of the proceedings would have been different.

{¶ 29} Trial counsel was not ineffective for failing to object to hearsay testimony regarding the location of the machete after the attack. Deputy Smith was dispatched to appellant's home two days after the attack, whereupon he spoke with Jen. After Jen signed a waiver of her Miranda rights, the deputy began questioning her and ultimately asked her what appellant had done with the machete. At trial, Deputy Smith testified on direct examination that Jen told him that appellant had placed the machete underneath a couch in his home. After trial counsel failed to object, the trial court called counsel to a side bar and inquired whether trial counsel was objecting to the out-of-court statement. Trial counsel replied, "We were planning on calling her, I don't believe that statement is damaging." Trial counsel, however, did not call Jen as a witness.

{¶ 30} "Hearsay" is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Hearsay is generally inadmissible in court unless the testimony is deemed "not hearsay" under Evid.R. 801(D) or falls under one of the hearsay exceptions articulated in Evid.R. 803 and 804. Jen's out-of-court statement was not hearsay to the extent it was offered to explain why the police looked for the machete underneath the couch. It was, however, hearsay to the extent it was offered to prove that appellant concealed the machete for purposes of the tampering with evidence charge. Furthermore, it was not admissible under Evid.R. 801(D), 803, or 804.

{¶ 31} Nevertheless, we find no basis for a claim of ineffective assistance on this issue. It is not the role of the appellate court to second-guess the strategic decisions of trial

counsel, including whether to object. *State v. Bowling*, 12th Dist. Madison No. CA98-09-034, 1999 Ohio App. LEXIS 5521, *14-15 (Nov. 22, 1999). At the time trial counsel failed to object to Jen's out-of-court statement, he intended to call her as a witness. Hindsight may not be used to distort the assessment of what was reasonable in light of trial counsel's perspective at the time. *Id.* at *15, citing *State v. Cook*, 65 Ohio St.3d 516 (1992). Moreover, the state did not rely upon the out-of-court statement to prove the tampering with evidence charge. Instead, the state relied upon the fact the machete was found underneath a couch where it could not have landed had appellant simply dropped or tossed the machete rather than consciously going around a coffee table and specifically placing the machete under the couch before leaving the crime scene. By contrast, trial counsel addressed Jen's statement during closing argument, arguing that Jen's knowledge of the location of the machete suggested it was Jen who put the machete under the couch before she and appellant left appellant's house following the machete attack. "Simply because the jury chose to reject this version of the events cannot be the basis for an ineffective assistance of counsel claim." *State v. Davis*, 12th Dist. Butler No. CA2012-12-258, 2013-Ohio-3878, ¶ 25. The fact that trial strategy was ultimately unsuccessful does not amount to ineffective assistance of counsel. *Id.*; *State v. Gearhart*, 12th Dist. Warren No. CA2017-12-168, 2018-Ohio-4180, ¶ 25.

{¶ 32} Appellant's first assignment of error is overruled.

{¶ 33} Assignment of Error No. 3:

{¶ 34} THE EVIDENCE WAS INSUFFICIENT AS A MATTER OF LAW AND/OR GOES AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE TO SUSTAIN DEFENDANT'S CONVICTIONS.

{¶ 35} Appellant argues that his felonious assault conviction is not supported by sufficient evidence and is against the manifest weight of the evidence because he was

acting in self-defense when he struck Tucker with a machete.

{¶ 36} Self-defense is an affirmative defense and as such is not considered in a sufficiency of the evidence analysis. *State v. Palmer*, 80 Ohio St.3d 543, 563 (1997); *State v. Green*, 12th Dist. Warren No. CA2017-11-161, 2018-Ohio-3991, ¶ 28. "An affirmative defense does not negate the legal adequacy of the state's proof for purposes of submitting it to the jury. An affirmative defense involves an excuse or justification for doing an otherwise illegal act. * * * It does not deny the existence of the act; it simply provides a legal justification for it." *State v. Cooper*, 170 Ohio App.3d 418, 2007-Ohio-1186, ¶ 15 (4th Dist.); *Green* at ¶ 28. Thus, "[o]nce the state has satisfied the question of legal adequacy * * *, the question of the relative persuasiveness of [a self-defense affirmative defense] must await a jury's determination and face appellate scrutiny under a manifest weight of the evidence analysis." *Cooper* at ¶ 15. As such, we find no merit to appellant's claim that his felonious assault conviction is based on insufficient evidence under the theory he acted in self-defense.

{¶ 37} To determine whether a conviction is against the manifest weight of the evidence, a reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Bradbury*, 12th Dist. Butler No. CA2015-06-111, 2016-Ohio-5091, ¶ 17. An appellate court will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal. *Id.* at ¶ 18.

{¶ 38} Appellant was convicted of felonious assault in violation of R.C. 2903.11(A)(1), which prohibits any person from knowingly causing serious physical harm

to another. Appellant admitted striking Tucker with the machete. It is not disputed that appellant caused serious physical harm to Tucker. Hence, the evidence at trial established the elements of felonious assault under R.C. 2903.11(A)(1). Appellant argues, however, that he acted in self-defense.

{¶ 39} At the time of appellant's trial, the burden of going forward with evidence of self-defense and the burden of proving self-defense by a preponderance of the evidence was upon the accused. *Palmer*, 80 Ohio St.3d at 563.

{¶ 40} To establish self-defense in a case involving use of nondeadly force, the defendant must prove that (1) he was not at fault in creating the situation giving rise to the altercation and (2) he had reasonable grounds to believe and an honest belief, even though mistaken, that he was in imminent danger of bodily harm and his only means to protect himself from the danger was by the use of force not likely to cause death or great bodily harm. *State v. Saturday*, 12th Dist. Butler No. CA2018-06-122, 2019-Ohio-193, ¶ 12. If a defendant fails to prove any one of these elements, he has failed to demonstrate he acted in self-defense. *Id*.

{¶ 41} Upon thoroughly reviewing the record, we find that the jury did not lose its way and create a manifest miscarriage of justice by rejecting appellant's claim of self-defense and finding him guilty of felonious assault. Appellant testified that Tucker's preattack words and threat to kill him did not frighten him as he did not actually believe Tucker's threat. Appellant presented no other evidence which would indicate that he had a belief he was in imminent danger of bodily harm and that his only means to protect himself from the danger was by the use of force not likely to cause death or great bodily harm. Accordingly, appellant's felonious assault conviction is not against the manifest weight of the evidence.

{¶ 42} Appellant's third assignment of error is overruled.

{¶ 43} Judgment affirmed.

RINGLAND, P.J., and PIPER, J., concur.