[Cite as *State v. Harner*, 2020-Ohio-1184.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLINTON COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2019-05-011 |
| | : | O P I N I O N |
| - vs - | | 3/30/2020 |
| | : | |
| JERRY WAYNE HARNER, SR., | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM CLINTON COUNTY COURT OF COMMON PLEAS
Case No.  CRI 18-500-220

Richard W. Moyer, Clinton County Prosecuting Attorney, Katie Wilkin, 103 E. Main Street, Wilmington, Ohio 45177, for appellee

Jeffrey W. Stueve, 530 N. Broadway Street, Lebanon, Ohio 45036, for appellant

**PIPER, J.**

{¶ 1}   Appellant, Jerry Harner Sr., appeals his conviction and sentence in the Clinton County Court of Common Pleas for receiving stolen property and for having weapons while under a disability.

{¶ 2}   In late July 2016, retired Ohio State Highway Trooper James Sears was driving past a residence on Nauvoo Road in Clinton County.  As he drove by, Sears saw a

1968 Thunderbird camper he owned and had previously reported stolen sitting in a driveway. Sears pulled into the driveway and called the sheriff's office. An investigation was conducted and in October 2016, a search warrant was performed on the property. During the search, officers discovered several other stolen items on the property, including a 2003 Harley Davidson motorcycle, a 2016 United box trailer, a United UTX box trailer and a 2016 Honda dirt bike. In addition, multiple firearms were discovered in the residence, including several in the master bedroom.

{¶ 3} Harner was charged with several fourth- and fifth-degree counts of receiving stolen property and with a charge of having weapons under disability based on firearms that were found in the residence.

{¶ 4} At trial, the property owners testified that their property had been stolen. Clinton County Sheriff's Detective Douglas Eastes testified regarding the search warrant and the items that were discovered during the search. Eastes and an expert from the National Insurance Crime Bureau ("NICB") explained how they determined the items were stolen, based on identifying marks, including the use of identifying marks not known to the public. In addition, the detective testified to discovering items with ground-off Vehicle Identification Numbers (VIN) which were replaced with a homemade stamp comprised of letters and numbers. The detective testified that when the numbers in the homemade stamp were disregarded, the letters spelled "H-A-R-N-E-R."

{¶ 5} A sheriff's deputy who assisted in the search testified and discussed the discovery of firearms in a farmhouse on the property. He stated that he test fired some of the weapons and determined they were operable. He also testified that he determined Harner and Rebecca Martin, Harner's girlfriend, were living in the home based on items found in the master bedroom, which included men's and women's clothes, a shoe box with male and female sex toys, and credit cards with Harner's name and Martin's name on them.

{¶ 6} Detective Eastes testified that he was concerned with the discovery of firearms in the house because he was aware that Harner had a previous drug conviction which precluded him from possessing firearms. Eastes indicated that he also interviewed some of the people on the scene during the search warrant. He testified that Martin, despite having some of her property in the house, told him Harner lived in the house, but she did not. Eastes testified that Harner was not present during the search, and the detective attempted to make contact later, but Harner did not return messages.

{¶ 7} Detective Eastes also testified that he spoke with a relative, Virginia Wallace, during execution of the search warrant. Wallace told Eastes that she and her son lived in a trailer which shares a common driveway with the farmhouse. Wallace told him that Martin and Harner lived at the farmhouse.

{¶ 8} At trial, Martin testified that she lived at the residence on Nauvoo Road with children she has with Harner. She testified that she has a business and acquires vehicles for salvage parts. She stated that Harner worked for her doing auto repair and service. She testified that she bought some of the items at issue from other people and other items were dropped off at the property for work to be performed on them. When questioned, she indicated she did not have any documentation with her to support her statements.

{¶ 9} According to Martin, at one point, Harner was living on the property, but he agreed to move out so she could live there with the children. She did not remember exactly when she moved in, but only that she was living in the house in August 2016 when the children started school. She testified that Harner often came back to the property to see his sons, but he did not live there.

{¶ 10} Harner testified that in the spring and summer of 2016, he was in the process of moving out of the property. He stated that he did not have a fixed address, but he was not on the property on July 27, 2016. He indicated that he performs work for Martin on the

property, but did not bring any documents, such as 1099 forms, to show his employment by Martin.

{¶ 11} A jury found Harner guilty of four counts of fourth-degree receiving stolen property, one count of fifth-degree receiving stolen property and the third-degree felony weapons under disability charge. He was sentenced to 12 months on each of the fourth-degree felonies, 6 months on the fifth-degree felony and 14 months on the third-degree felony. All of the sentences were ordered to run concurrently, for an aggregate sentence of 14 months.

{¶ 12} Harner now appeals his conviction and sentence, raising five assignments of error for our review. For ease of discussion, we begin by addressing Harner's third assignment of error.

{¶ 13} III. THE EVIDENCE WAS INSUFFICIENT TO SUPPORT THE CONVICTIONS AND THE CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 14} When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would support a conviction. *State v. Workman*, 12th Dist. Clermont Nos. CA2016-12-082 and CA2016-12-083, 2017-Ohio-8638, ¶ 20. The relevant inquiry is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Watson*, 12th Dist. Warren No. CA2014-08-110, 2015-Ohio-2321, ¶ 22.

{¶ 15} To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in

resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. *State v. Bradbury*, 12th Dist. Butler No. CA2015-06-111, 2016-Ohio-5091, ¶ 17. An appellate court will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal. *Id.* at ¶ 18. A determination that a conviction is supported by the manifest weight of the evidence will also be dispositive of the issue of sufficiency. *State v. Peyton*, 12th Dist. Butler No. CA2015-06-112, 2017-Ohio-243, ¶ 48.

{¶ 16} In this assignment of error, Harner first argues that the evidence did not support his conviction for receiving stolen property. Specifically, he argues that the evidence does not support a finding that he received, retained of, or knew that the property was stolen. He contends that there is no evidence he was present during any of the theft offenses, nothing contradicts his testimony that he was not there when the items were dropped off, there was a reasonable explanation why the items were on the property, there were numerous items on the property and only a small percent were identified as stolen and there was a significant length of time between the time some of the items were stolen and when they were discovered on the property. He further argues that it took a special expert to determine some of the items were stolen and so it would be difficult for him as a layperson to determine if the items were stolen. Finally, he argues that the only evidence of receipt or retention was that he was a resident of the home on Nauvoo Road, and this determination was made on conclusory or hearsay evidence.

{¶ 17} R.C. 2913.51 defines the offense of receiving stolen property and provides that "[n]o person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense." A person has "reasonable cause to believe" property was obtained through

a theft offense when, "'after putting oneself in the position of this defendant, with his knowledge, lack of knowledge, and under the circumstances and conditions that surrounded him at the time, the acts and words and all the surrounding circumstances would have caused a person of ordinary prudence and care to believe that the property had been obtained through the commission of a theft offense.'" *State v. Pangburn*, 12th Dist. Clermont No. CA2015-11-095, 2016-Ohio-3286, ¶ 15, quoting *State v. Collins*, 10th Dist. Franklin No. 11AP-130, 2012-Ohio-372, ¶ 12. "Absent an admission by a defendant, the question of whether the defendant had reasonable cause to believe an item was stolen can only be proved by circumstantial evidence." *State v. Rivera*, 12th Dist. Butler No. CA2012-11-220, 2013-Ohio-3203, ¶ 9.

{¶ 18} "Because guilty knowledge may be inferred from the unexplained, or unsatisfactorily-explained, receipt of stolen property, it is appropriate, in weighing this type of evidence, to consider the personal interest and motivation of a defendant who tries to distance himself from such items upon discovery." *State v. Emery*, 6th Dist. Lucas No. L-11-1228, 2013-Ohio-208, ¶ 25. Moreover, "[u]nder the 'reasonable cause to believe' standard of R.C. 2913.51(A), a denial of knowledge is tested for reasonableness against the context in which the denial is made." *Id.* A court "may also consider obvious gaps or discrepancies in a putative explanation, its vagueness, and whether any attempt was made to corroborate or prove it when the opportunity existed." *Id.*

{¶ 19} The evidence presented at trial showed that the items were stolen and Harner did not have permission to use them. Although Martin and Harner both testified that they did not know the items were stolen, several of the items had identifying marks and numbers tampered with. Some of the vehicles had homemade VIN numbers to replace the ground-off original numbers. Others had stickers which left indications that the VINs had been removed in order to hide their identity. Other items had been painted. In addition, although

Martin and Harner both gave explanations regarding where the items came from, several of the explanations were vague and without corroborating evidence. While the NICB expert testified regarding how he determined the items were stolen, much of this testimony involved techniques used to discover identifying marks and to locate the original owner. The fact that an expert was necessary to locate owners does not negate the fact that on examination, it was apparent that steps had been taken to conceal identifying marks on the property.

{¶ 20} With regard to Harner's residence at the property, the state presented evidence that Harner's name was on the lease to the property and on an eviction action which was instituted in 2017. In addition, the state presented evidence that men's clothing was found in the master bedroom of the house, along with male sex toys and a credit card with Harner's name on it.

{¶ 21} Witnesses testified that Harner was on the property and that he lived there. Deputy Boris testified that he had responded to a dispute on the property in 2015 and Harner indicated he lived in the farmhouse.

{¶ 22} Harner argues Sears' testimony that Harner was on the property when Sears saw his stolen camper was contradictory. However, when read in context, the testimony reveals otherwise. Sears testified that he drove by slowly and hit his brakes when he recognized the camper as his, and he initially did not recognize any of the people on the property who ran away. He testified, however, that when one of the people he had seen running away came walking from behind the house, in the backyard, and circled behind him, Sears recognized Harner. Sears indicated Harner's clothes, gait, height, and weight matched one of the people he had seen running away. Sears also testified that he lived in the area, knew Harner as a neighbor, and would see him almost daily.

{¶ 23} After reviewing the transcripts and evidence submitted in this case, we find

Harner's convictions for receiving stolen property were not against the manifest weight of the evidence. The state produced evidence, which if believed would support the convictions. While Harner and Martin provided explanations of why and how the stolen items were on the property, when there is a conflict in the testimony of witnesses, it is for the trier of fact to determine the weight and credibility to be given to such evidence. *State v. Marcum*, 12th Dist. Butler No. CA2017-05-057, 2018-Ohio-1009, ¶ 31, citing *State v. DeHass*, 10 Ohio St. 2d 230, paragraph one of the syllabus. The jury, as the trier of fact, was free to believe all, part, or none of testimony of each witness. *State v. Tanner*, 12th Dist. Butler No. CA2018-04-088, 2019-Ohio-1193, ¶ 38.

{¶ 24} Harner also argues that his conviction for having weapons under disability was not supported by sufficient evidence and was against the manifest weight of the evidence. R.C. 2923.13 provides that "no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance" if the person has been convicted of a felony drug offense.

{¶ 25} Harner argues that the evidence does not support a finding that he acquired, held, carried, or used firearms because the evidence does not support a finding that he was a resident of the home where the firearms were found. However, as discussed above, evidence was presented that if believed, established that Harner lived in the house where the firearms were found.

{¶ 26} Accordingly, we find that Harner's convictions for receiving stolen property and having weapons while under a disability were not against the manifest weight of the evidence. Because we have determined the convictions are not against the manifest weight of the evidence, they are also supported by sufficient evidence. Appellant's third assignment of error is overruled.

{¶ 27} I. THE APPELLANT WAS DENIED A FAIR TRIAL BY STATEMENTS MADE

BY THE PROSECUTOR DURING CLOSING ARGUMENTS.

{¶ 28} Harner argues that the prosecutor made improper comments during closing arguments imputing Martin's actions to him and that he would not have been convicted if Martin's actions had not been imputed to him.

{¶ 29} The state is entitled to a certain degree of latitude in making its closing remarks. *State v. Layne*, 12th Dist. Clermont No. CA2009-07-043, 2010-Ohio-2308, ¶ 58. For a conviction to be reversed because of prosecutorial misconduct, a defendant must prove the prosecutor's acts were improper and that they prejudicially affected the defendant's substantial rights. *State v. Elmore*, 111 Ohio St.3d 515, 2006-Ohio-6207, ¶ 62. To demonstrate prejudice, a defendant must show that the improper acts were so prejudicial that the outcome of the trial would clearly have been otherwise had they not occurred. *State v. Jones*, 12th Dist. Butler No. CA2006-11-298, 2008-Ohio-865, ¶ 21. The focus of "an inquiry into allegations of prosecutorial misconduct is upon the fairness of the trial, not upon the culpability of the prosecutor." *State v. Gray*, 12th Dist. Butler No. CA2011-09-176, 2012-Ohio-4769, ¶ 57. As such, prosecutorial misconduct "is not grounds for error unless the defendant has been denied a fair trial." *State v. Olvera-Guillen*, 12th Dist. Butler No. CA2007-05-118, 2008-Ohio-5416, ¶ 27.

{¶ 30} In the comments Harner argues were improper and prejudicial, the prosecutor stated that Harner was running a "chop-shop" with his girlfriend and discussed Martin's credibility and the fact that charges against her had been dismissed, but she would "have her day in court." Harner further argues that he was prejudiced by comments that Martin and Harner were trying to "pull the wool over your eyes because they think they're smarter than everyone else" and "can make fake documents and pass them off at the BMV in order to cover their tracks." The prosecutor further commented that when the detective was called to the stand on rebuttal, Harner and Martin "couldn't quit talking and looking at each other"

because they knew Eastes had items to prove they lied to the jury.

{¶ 31} Harner's counsel did not object to these comments at trial and we are therefore limited to a review for plain error. *State v. Warwick*, 12th Dist. Preble No. CA2017-01-001, 2018-Ohio-139, ¶ 30. Crim.R. 52(B) provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Plain error does not exist unless the error is obvious and, but for the error, the outcome of the trial would have been different. *State v. Yanez*, 12th Dist. Butler No. CA2016-10-190, 2017-Ohio-7209, ¶ 23. Notice of plain error is taken with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. *State v. Grisham*, 12th Dist. Warren No. CA2013-12-118, 2014-Ohio-3558, ¶ 38. Prosecutorial misconduct may rise to the level of plain error only if it is clear from the record that the defendant would not have been convicted in the absence of the improper comments. *State v. Isreal*, 12th Dist. Butler No. CA2010-07-170, 2011-Ohio-1474, ¶ 43.

{¶ 32} In context, the prosecutor's comments did not impute Martin's actions to Harner, but instead were an attempt to focus the jury on Harner's culpability, not Martin's. Martin's testimony attempted to explain the items' presence on the property and that Harner was not involved. However, her testimony was at times vague, confusing, and was contradicted by other evidence. The prosecutor's comments merely instructed the jury to look at Harner's guilt and not Martin's. Moreover, a prosecutor may comment on a defendant's reaction to the evidence presented, his demeanor and body language. *State v. Green*, 90 Ohio St.3d 352, 373; *State v. Erker*, 8th Dist. Cuyahoga No. 107790, 2019-Ohio-3185, ¶ 121.

{¶ 33} Harner also argues that the prosecutor improperly commented on the fact that Martin and Harner knew the trial was coming and had time to prepare documents to support their claims that items were dropped off for work to be performed or purchased for the

business.  Counsel objected to this comment and the trial court sustained the objection.

{¶ 34} This statement was a reflection of questions asked of Harner and Martin on cross-examination regarding whether they had documents to support their testimony that Martin was operating a business, Harner was working for her, and that the stolen items had been purchased or dropped off for work to be performed.  Both claimed that they had documentation to support their testimony, but they did not bring it to trial.  After the court sustained the objection, the prosecutor then continued and clarified that Harner did not have the burden of proof in the case, but he did not submit any evidence to support his testimony.

{¶ 35} We find no error in the prosecutor's comments.  The trial court sustained an initial objection and the prosecutor then clarified that Harner did not have the burden of proof.  The following discussion in closing arguments related to the believability and credibility of the testimony.  Accordingly, because we find no error in the comments, Harner has not established prosecutorial misconduct in closing arguments.  Harner's first assignment of error is overruled.

{¶ 36} II.  THE APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL.

{¶ 37} In his second assignment of error, Harner argues that trial counsel was ineffective for failing to object to inadmissible hearsay and improper arguments by the prosecutor.  He also argues counsel was ineffective for failing to introduce exculpatory evidence or to proffer evidence.

{¶ 38} To prevail on an ineffective assistance of counsel claim, an appellant must show his trial counsel's performance was deficient, and that he was prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052 (1984).  Trial counsel's performance will not be deemed deficient unless it fell below an objective standard of reasonableness.  *Id*. at 688.  To show prejudice, appellant must establish that, but for his

trial counsel's errors, there is a reasonable probability that the result of his trial would have been different. *Id.* at 694.

{¶ 39} A strong presumption exists that a licensed attorney is competent and that the challenged action is the product of sound trial strategy and falls within the wide range of professional assistance. *Id.* at 689. While the wisdom of a given strategy may be debatable, trial tactics, even "debatable trial tactics," do not constitute a denial of effective assistance of counsel. *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, ¶ 146.

{¶ 40} Harner argues that counsel was ineffective for repeatedly failing to object to inadmissible hearsay. He argues he was prejudiced because the only evidence that he lived at the farmhouse on the property was inadmissible hearsay. The statements made by the detective and deputy during the performance of the search warrant detailed steps taken during their investigation, including viewing records that indicated Harner lived on the property and speaking to others, including Wallace, who stated that Harner lived in the farmhouse.

{¶ 41} We first note that despite Harner's argument to the contrary, there was other evidence presented that indicated Harner lived on the property. In fact, Harner himself admitted that he lived on the property, but stated that he was in the process of moving out in the spring and summer of 2016. Given the fact that there is evidence that Harner at some point lived on the property, even assuming the statements were hearsay, trial counsel may have chosen not to object to the statements and to instead rely on testimony from Harner and Martin that Harner was not living on the property when the stolen items and firearms were discovered. It is not the role of the appellate court to second-guess the strategic decisions of trial counsel, including whether to object. *State v. Debord*, 12th Dist. Clinton No. CA2019-03-003, 2020-Ohio-57, ¶ 31.

{¶ 42} Harner also argues that trial counsel was ineffective for failing to present

- 12 -

exculpatory evidence. Harner claims that a folder of titles, work orders, receipts and affidavits were submitted to trial counsel, but not presented as evidence. However, any argument as to the effect of this evidence is speculative as this evidence is not in the record. If counsel found the documentation to be less than authentic or genuine, it would be a matter of sound trial strategy to not use the documents at trial.[1] Establishing the prejudice from the failure to submit this evidence at trial would require proof outside the record, which is not appropriately considered on direct appeal. *State v. Hartman*, (2001), 93 Ohio St.3d 274, 299.

{¶ 43} Accordingly, we find no merit to Harner's arguments that trial counsel was ineffective and his second assignment of error is overruled.

{¶ 44} IV.    THE SENTENCE IMPOSED IS CLEARLY CONTRARY TO LAW.

{¶ 45} In his fourth assignment of error, Harner contends that his sentence for having weapons under disability is contrary to law because it is outside the statutory range.

{¶ 46} An appellate court reviews the imposed sentence according to R.C. 2953.08(G)(2), which governs all felony sentences. *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, ¶ 1. R.C. 2953.08(G)(2) provides that an appellate court can modify or vacate a sentence only if the appellate court finds by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law.

{¶ 47} Having weapons while under disability is a third-degree felony. R.C. 2923.13(B). The possible sentences for a third-degree felony are 9, 12, 18, 24, 30 or 36 months. R.C. 2929.14(A)(3)(b). The trial court imposed a 14-month sentence for the

---

1. We further note counsel is not permitted to offer evidence he knows to be false and may refuse to offer evidence in a criminal matter that he reasonably believes is false. Prof.Cond.R. 3.3(a)(3).

offense, which is contrary to law.

{¶ 48} Appellant acknowledges that he realizes the court may increase the sentence, but argues increasing the sentence would not be appropriate and instead asks this court to modify the sentence by reducing it to 12 months. The state acknowledges that the sentence is contrary to law, but asks this court to modify the sentence by increasing to the next highest available term, which is 18 months.

{¶ 49} While an appellate court has the power to modify a sentence on appeal, in this case, we find the appropriate course of action is to vacate the sentence and to remand the case for the trial court to impose a sentence within the allowable range. Accordingly, we find Harner's fourth assignment of error has merit. The 14-month sentence imposed for having weapons under a disability is vacated and the case is remanded for the trial court to impose one of the prison terms set forth in R.C. R.C. 2929.14(A)(3)(b).

{¶ 50} V. THE CUMULATIVE EFFECT OF THE ERRORS OF THE TRIAL COURT PREVENTED THE APPELLANT FROM RECEIVING A FAIR TRIAL.

{¶ 51} Under the doctrine of cumulative error, "a conviction will be reversed where the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial even though each of numerous instances of trial court error does not individually constitute cause for reversal." *State v. McClurkin*, 12th Dist. Butler No. CA2007-03-071, 2010-Ohio-1938, ¶ 105; *State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, ¶ 140. Harmless or nonprejudicial errors cannot become prejudicial by sheer weight of numbers alone. *See State v. Hill*, 75 Ohio St.3d 195, 212, 1996-Ohio 222 (1996).

{¶ 52} In addition, "[i]t is not enough simply to intone the phrase 'cumulative error.'" *State v. Bethel*, 110 Ohio St.3d 416, 2006-Ohio-4853, ¶ 197. Without analysis or explanation as to why or how the errors have had a prejudicial effect, an assignment of error claiming cumulative errors has no substance. *Id*.; *State v. Sapp*, 105 Ohio St.3d 104,

2004-Ohio-7008, ¶ 103.

{¶ 53} Because we have found that no errors occurred during the trial, we find that Harner was not deprived of a fair trial, and the cumulative error doctrine is inapplicable. Harner's fifth assignment of error is, therefore, overruled.

{¶ 54} In conclusion, we find no merit to Harner's first, second, third and fifth assignments of error. Harner's fourth assignment of error is sustained, his sentence for having weapons under a disability is vacated and the case is remanded to the trial court to impose one of the prison terms set forth in R.C. 2929.14(A)(3)(b). In all other respects, Harner's conviction and sentences are affirmed.

{¶ 55} Judgment affirmed in part and reversed in part, and remanded for further proceedings.

HENDRICKSON, P.J., and RINGLAND, J., concur.